

# In the Missouri Court of Appeals

# Eastern District

## DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100813 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael K. Mullen |
| DARIAN HALLIDAY, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 14, 2015 |

### Introduction

Appellant Darian Halliday ("Halliday") appeals from the judgment of the trial court entered upon a jury verdict finding him guilty of one count of unlawful possession of a firearm in violation of Section 571.070 and three counts of felony possession of a controlled substance in violation of Section 195.202.[1] On appeal, Halliday asserts that the trial court plainly erred in overruling his motion to suppress evidence of the firearm and drugs found in Halliday's hotel room because the search warrant which resulted in the seizure of those items was not supported by probable cause. In particular, Halliday argues that the affidavit underlying the warrant relied on hearsay from a confidential informant and there was no substantial basis for crediting the informant's basis of knowledge or veracity. Because we find that the affidavit underlying the warrant was sufficient to

---

[1] All statutory references are to RSMo (2000).

support a good-faith belief that the warrant was valid, we decline Halliday's request for plain error review and affirm the judgment of the trial court.

Procedural and Factual Background

On January 27, 2011, a confidential informant ("the CI") contacted Detectives Michael Langsdorf and Craig Robertson with information that a person by the name of "Pimp Daddy" was storing and selling cocaine and heroin in Room 216 at America's Best Value Inn in downtown St. Louis. The detectives knew Halliday went by the name "Pimp Daddy," and were familiar with him from previous investigations conducted by their unit. The CI also told the officers that he or she had seen "Pimp Daddy" with a black semi-automatic handgun within the past twenty-four hours.

Shortly after receiving this information, the detectives went to the area around the America's Best Value Inn to conduct surveillance. The America's Best Value Inn is an open-air motel which allowed the detectives to observe individual hotel rooms from the street. When they arrived at the hotel, the detectives observed Halliday standing in a hotel room. While conducting surveillance of Halliday's hotel room, the detectives observed approximately nine people arrive at the hotel at different times throughout the day, knock on Halliday's door, enter the hotel room, and then leave after staying for less than two minutes. During one of these visits, the detectives observed Halliday conduct what appeared to be a hand-to-hand drug transaction.

Based upon the information from the CI and the detectives' subsequent surveillance of the hotel, the detectives requested a warrant to search Halliday's hotel room at the America's Best Value Inn. The warrant was granted, but before the warrant could be executed, the same CI informed the detectives that Halliday had moved to a different hotel.

Approximately two weeks later, on February 9, 2011, the same CI contacted Detective Langsdorf and told him that Halliday had moved his operations to the Hyatt Regency Hotel in

2

downtown St. Louis. The CI stated that only fifteen hours earlier, he or she had been inside Halliday's hotel room and had observed a large quantity of crack cocaine, large amounts of U.S. currency, and a black semi-automatic firearm. Based on this new information from the CI, Detective Langsdorf returned the search warrant for the America's Best Value Inn as non-executed and sought and obtained a warrant to search Halliday's room at the Hyatt Regency. In the application to search the Hyatt Regency room, Detective Langsdorf attested as follows:

> I was contacted on today's date, February 9, 2011, by a Confidential Source, C/S for the purpose of this affidavit, and he/she stated an individual known to them as "Pimp Daddy" is currently selling and storing large quantities of heroin and crack cocaine inside his hotel room located at 315 Chestnut St., room 1554, at the Hyatt Regency Hotel. This individual states that "Pimp Daddy" obtains the narcotics and breaks it down, packaging same, for individual sale.

> The C/S stated that "Pimp Daddy" is not only known to carry a firearm on his person, but also hides illegal narcotics in various places on his body. C/S stated that he/she has witnessed "Pimp Daddy" placing and retrieving narcotics from inside his mouth and also inside his rectum. The C/S stated that "Pimp Daddy" hides these narcotics in these inconspicuous places to thwart detection by Law Enforcement.

> The C/S has stated they were inside the hotel room in the past 15 hours and have observed a large quantity of heroin, crack cocaine, a black semi-automatic firearm, and a large amount of US Currency inside the Hyatt Regency Hotel, room 1554, at 315 Chestnut St.

Detective Langsdorf further attested that Halliday is known as "Pimp Daddy" and listed Halliday's arrest history. Finally, Detective Langsdorf incorporated the probable cause affidavit he had previously used in his request to search Halliday's room at the America's Best Value Inn. The incorporated affidavit included the fact that the CI who provided the tip about the America's Best Value Inn was a known, reliable source. However, Detective Langsdorf failed to indicate that the information relating to the activities at the Hyatt Regency came from the same source.

The warrant was executed on February 11, 2011. Among other items, officers seized a .44 caliber revolver, crack cocaine, powder cocaine, and heroin. As a result of the search and seizure, the

3

State of Missouri subsequently charged Halliday with one count of unlawful possession of a firearm in violation of Section 571.070 and three counts of felony possession of a controlled substance in violation of Section 195.202.

Prior to trial, Halliday moved to suppress evidence of the firearm, cocaine, and heroin obtained during the search of his hotel room at the Hyatt Regency. Halliday alleged that the affidavit supporting the warrant application was insufficient to establish probable cause for the search because it failed to indicate that the CI providing the information to Detective Langsdorf was reliable. The trial court denied Halliday's motion.

A jury found Halliday guilty on all four counts. Thereafter, the trial court sentenced Halliday to seven years of imprisonment on each count of possession of a controlled substance, and to four years of imprisonment on the unlawful possession of a firearm count. This appeal follows.

## Point on Appeal

In his sole point on appeal, Halliday asserts that the trial court plainly erred in overruling his motion to suppress evidence of the firearm and drugs found in his hotel room because the search warrant which resulted in the seizure of those items was not supported by probable cause. Specifically, Halliday argues that the affidavit supporting the warrant relied upon hearsay from a confidential informant but did not indicate that the informant was reliable or otherwise establish the veracity of the information.

## Standard of Review

Halliday did not properly preserve his claimed error for appellate review and thus requests plain error review under Rule 30.20.[2] Rule 30.20 provides, in pertinent part, that plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted. The plain error rule should be used

---

[2] All rule references are to Mo. R. Crim. P. (2014).

4

sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. State v. Burgin, 203 S.W.3d 713, 715 (Mo. App. E.D. 2006).

A request for plain error review triggers the commencement of a two-step analysis. First, the appellate court looks to determine whether the asserted claim of plain error facially establishes substantial grounds for believing that the trial court committed a "plain" error which resulted in manifest injustice or a miscarriage of justice. State v. White, 247 S.W.3d 557, 561 (Mo. App. E.D. 2007). "Plain" error is error that is evident, obvious, and clear. Id. If facially substantial grounds are found to exist, the appellate court should then move to the second step of this analysis and engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. Id. If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. Id.

## Discussion

Halliday's claim of plain error is predicated on his contention that the firearm and drugs seized during the execution of the search warrant of Halliday's hotel room should have been excluded because the affidavit underlying the search warrant was wholly inadequate to establish probable cause. Specifically, Halliday argues that the affidavit could not sustain the required probable cause finding because it lacked information essential to establishing the reliability of the informant and lacked additional information from the informant required for the issuance of the search warrant. While the CI's information regarding the America's Best Value Inn was corroborated by the detectives' surveillance of that hotel, Halliday asserts that the detectives did not corroborate the CI's information about the activity at the Hyatt Regency before applying for the search warrant. Further, Halliday notes that the affidavit fails to indicate that the information relating to the activities at the

5

Hyatt Regency was provided by the same source, and therefore the issuing court had no basis for determining if the CI providing information relating to the Hyatt Regency was reliable.

The State denies that the affidavit underlying the search warrant was deficient. However, even if the affidavit was deficient, the State contends that the evidence seized during the execution of the search warrant was nevertheless admissible under the good-faith exception to the exclusionary rule. We agree. Because we find that the good-faith exception to exclusionary rule applied to the execution of warrant in this case, we need not address the issue of whether probable cause existed for issuance of the warrant. See State v. Pattie, 42 S.W.3d 825, 827 (Mo. App. E.D. 2001) (citing U.S. v. Craig, 861 F.2d 818, 821 (5th Cir. 1988)).

The Fourth Amendment to the United States Constitution ensures the rights of citizens to be free from unreasonable searches and seizures and requires that no warrant shall issue except on probable cause supported by oath or affirmation. U.S. Const. amend. IV; State v. Neher, 213 S.W.3d 44, 48-49 (Mo. banc 2007). "In determining whether probable cause exists, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Neher, 213 S.W.3d at 49 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (internal quotations omitted).

Under the exclusionary rule, evidence obtained as a direct result of an unlawful search is generally inadmissible at trial as fruit of the poisonous tree. State v. Miller, 894 S.W.2d 649, 654 (Mo. banc 1995) (citing Nardone v. United States, 308 U.S. 338, 341 (1939)). However, in United States v. Leon, the United States Supreme Court recognized an exception to this general rule. In Leon, the Court held that evidence obtained by police officers exercising objectively reasonable reliance on a subsequently invalidated search warrant should not be suppressed pursuant to the exclusionary rule. United States v. Leon, 468 U.S. 897, 922 (1984). In reaching this holding, the

6

Court reasoned that if the purpose of the exclusionary rule is to deter unlawful police conduct, then unlawfully obtained evidence should be suppressed only upon evidence of police misconduct or illegality. Id. at 919-21. The Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922.

The key to this exception is *reasonable* reliance. "[A]n officer will not be able to claim objective good faith and the suppression of evidence is still appropriate where the warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Pattie, 42 S.W.3d at 827 (citing Leon, 468 U.S. at 923). Thus, a reviewing court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922, n.23.

Here, we find that the search warrant for Halliday's hotel room at the Hyatt Regency was executed in good faith and in reasonable reliance upon the issuing judge's authorization. Detective Langsdorf applied for the search warrant after investigating Halliday for several weeks. Just two weeks before he received the tip that Halliday was selling drugs from a hotel room in the Hyatt Regency, Detective Langsdorf corroborated a tip from the same informant that Halliday was selling drugs out of a room at the America's Best Value Inn. Thus, Detective Langsdorf had personal, first-hand knowledge that the CI who provided the tip about the Hyatt Regency was reliable.[3] While Detective Langsdorf failed to clearly advise the issuing judge that the CI was reliable, under Leon, our focus is not on the issuing judge's decision, but on the police officer's decision to seek and then execute a certain warrant. See id. at 922-23. Our review of the record reveals no evidence of police misconduct or illegality. Because Detective Langsdorf had personal knowledge

---

[3] At the hearing on Halliday's motion to suppress, Detective Langsdorf also testified that he has used this informant in the past and he or she was proven reliable.

that the CI was reliable, it was reasonable for him to rely on the search warrant. If in fact the warrant was invalid, an issue which we do not decide, the error rests on the issuing judge, not on Detective Langsdorf. Under these circumstances, application of the exclusionary rule is inappropriate.

Because the execution of the search warrant in this case falls squarely within the good-faith exception to the exclusionary rule, we do not find facially substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred. Accordingly, we need not proceed to the second step of plain error review to determine whether a manifest injustice or miscarriage of justice has actually occurred.

## Conclusion

Halliday has not met his burden of establishing facially substantial grounds for believing that a manifest injustice or miscarriage of justice might have occurred in his case. Accordingly, we decline to exercise the discretion afforded us by Rule 30.20 to engage in plain error review. The judgment of the trial court is affirmed.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

8