Angela T. Quigless, J.
Joshua K. Armstrong ("Armstrong") appeals the judgment of the trial court following a jury trial in which he was convicted of two counts of attempted first-degree statutory rape, seven counts of first-degree *566 statutory sodomy, six counts of attempted first-degree statutory sodomy, and six counts of first-degree child molestation. Armstrong raises nineteen points on appeal. Armstrong argues the trial court plainly erred in submitting the verdict directing instructions for sixteen counts because the instructions violated his constitutional right to a unanimous jury verdict. Armstrong also argues there was insufficient evidence presented at trial to support three of his convictions. Finding no error, we affirm.
Factual and Procedural Background
This Court reviews the evidence in the light most favorable to the jury's verdict. State v. McCauley , 528 S.W.3d 421, 423 (Mo. App. E.D. 2017). The State charged Armstrong with two counts of attempted first-degree statutory rape, in violation of Sections 566.032 RSMo (2000)[1] and 564.011; seven counts of first-degree statutory sodomy, in violation of Section 566.062; six counts of attempted first-degree statutory sodomy, in violation of Sections 566.062 and 564.011; and six counts of first-degree child molestation, in violation of Section 566.067. The case proceeded to a jury trial.
At trial, Victim testified Armstrong is her father. In 2016, Armstrong, Victim's mother ("Mother"), Victim, and her younger brother and half-brother lived together in an apartment in Ste. Genevieve. Victim was twelve turning thirteen years old. One night in February 2016, when Mother was working the night shift, Victim testified Armstrong came into her bedroom while she was asleep, and tried to climb on top of her and pull down her sweatpants. Armstrong said, "Let me do it." Victim said, "No," and pushed Armstrong away. Later that same night, Victim testified Armstrong came back into her bedroom. Armstrong touched Victim's vagina and breasts. Armstrong also grabbed Victim's hand and tried to get her to touch his penis. Victim testified during the month of February, Armstrong came into her bedroom at night, and touched her vagina "at least ten" times, touched her breasts "at least five" times, and tried to get her to touch his penis "at least ten" times.
In March 2016, Victim testified she, Mother, and brother moved into a different apartment. However, Armstrong continued to live in the apartment in Ste. Genevieve. Victim and her brother stayed overnight at Armstrong's apartment when Mother worked night shifts during the week. Then, in mid-May 2016, Victim, Mother, and brother moved to her grandparents' home, and Victim only spent weekends at Armstrong's apartment. Victim testified that from March 2016 until July 2016, almost every time she stayed overnight at Armstrong's apartment, he came into her bedroom at night. Each time, Armstrong touched her vagina and her breasts, and tried to get her to touch his penis. Victim testified during March, April, and May, Armstrong touched her vagina "at least ten" times each month, touched her breasts "at least five" times each month, and tried to get her to touch his penis "at least ten" times each month. In June, Armstrong touched her vagina "about five" times, touched her breasts "about two or three" times, and tried to get her to touch his penis "about five" times. Victim testified she did not disclose the abuse because Armstrong threatened to rape her if she told Mother.
In addition, one night in July 2016, Victim testified she was asleep in a recliner chair at Armstrong's apartment. Armstrong turned on the light, causing Victim to wake up. Armstrong told Victim to lean *567 her head back and close her eyes. Victim complied, then felt something touch her lips. When she opened her eyes, it was Armstrong's penis, and Victim pushed him away. A few weeks later in July, Victim testified she was in her bedroom at Armstrong's apartment. Armstrong came into Victim's bedroom, and tried to climb on top of her and pull down her pants. After this last incident, Victim testified she refused to go to Armstrong's apartment. A few months later, Victim told Mother that Armstrong had sexually abused her and threatened to rape her.
Mother testified that in February 2016, the family lived together in the apartment in Ste. Genevieve, and she would leave Victim in Armstrong's care when she worked the night shift. After they moved out in March, Victim would stay overnight at Armstrong's apartment during the week while Mother worked. When they moved in with Victim's grandparents in mid-May, Victim continued to stay overnight at Armstrong's apartment, though, less frequently. Mother testified that around late July 2016, Victim would "throw a fit" when she had to spend the night at Armstrong's apartment, and Mother would have to force Victim to go. Mother stopped forcing Victim to go in August or September. Mother testified that after Victim informed her of the sexual abuse, she brought Victim to the Children's Advocacy Center ("CAC"), where a forensic interviewer conducted a videotaped interview with Victim.
In the CAC interview, which was admitted into evidence at trial and played for the jury, Victim recounted the multiple, identical acts of sexual abuse she described in her trial testimony. Victim stated that from February 2016 to July 2016, every time she stayed at Armstrong's apartment, Armstrong came into her bedroom at night and touched her vagina. Victim also stated Armstrong touched her breasts and tried to get her to touch his penis between February and July. Victim did not indicate how many times these acts occurred during each month.
Additionally, Armstrong voluntarily spoke with police and, although, he initially denied Victim's allegations, he eventually admitted touching Victim's vagina and breasts outside her clothing. Armstrong also told police Victim touched his penis outside his clothing. Armstrong further admitted he took his penis out and tried to get Victim to perform oral sex on him in the recliner chair. The videotaped interview was admitted into evidence at trial and played for the jury.
At the conclusion of trial, the trial court instructed the jury on the twenty-one counts charged. Armstrong did not object to the instructions as offered at trial. Nor did Armstrong raise instructional error in his motion for new trial. The jury found Armstrong guilty on all counts. Armstrong was sentenced to fifteen years for each count, with the sentences for the counts of attempted statutory rape, statutory sodomy, and attempted statutory sodomy to run consecutively, for a total of two hundred and twenty-five years' imprisonment. This appeal follows.[2]
Points on Appeal
Armstrong raises nineteen points on appeal. For ease of analysis, we first address Points I-XVI together and then address Points XVII-XIX together.
In Points I-XVI, Armstrong argues the trial court plainly erred in submitting verdict directing instructions for each of the *568 sixteen counts involving first-degree statutory sodomy (Counts 3-8), attempted first-degree statutory sodomy (Counts 9-13), and first-degree child molestation (Counts 16-20), and sentencing Armstrong because the verdict director for each count failed to specify a particular incident of abuse or instruct the jurors that they must unanimously agree on the same incident to support each conviction, and, thereby, violated his constitutional right to a unanimous jury verdict.
In Points XVII-XIX, Armstrong argues the trial court erred in overruling his motions for judgment of acquittal, and imposing sentence and judgment upon him as to Count 14 (attempted first-degree statutory sodomy), Count 21 (first-degree child molestation), and Count 15 (first-degree statutory sodomy) because there was insufficient evidence presented at trial to support the convictions.
Discussion
Points I-XVI-Instructional Error
Points I-XVI involve the verdict directing instructions for six counts of first-degree statutory sodomy (Counts 3-8), five counts of attempted first-degree statutory sodomy (Counts 9-13), and five counts of first-degree child molestation (Counts 16-20). Armstrong argues the trial court plainly erred in submitting each of the sixteen verdict directors and sentencing him because the verdict directors failed to specify a particular incident of abuse or instruct the jurors that they must unanimously agree on the same incident to support each conviction, and, thereby, violated his constitutional right to a unanimous jury verdict.
Standard of Review
Armstrong concedes he did not properly preserve these sixteen claims of error and requests we review the claims for plain error under Rule 30.20.[3] See State v. Riley , 440 S.W.3d 561, 567 (Mo. App. E.D. 2014). Rule 30.20 provides, in pertinent part, that plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted.
Review for plain error is a two-step process. State v. Halliday , 461 S.W.3d 50, 54 (Mo. App. E.D. 2015). First, the appellate court must determine whether the asserted claim of plain error facially establishes substantial grounds for believing the trial court committed a plain error which resulted in manifest injustice or miscarriage of justice. Id. Plain error is error that is evident, obvious, and clear. State v. Myles , 479 S.W.3d 649, 655 (Mo. App. E.D. 2015). Instructional error is plain error when it is apparent the error affected the verdict. State v. Hunt , 451 S.W.3d 251, 260 (Mo. banc 2014). Second, if facially substantial grounds are found to exist, the appellate court must engage in plain error review to determine whether manifest injustice or miscarriage of justice has actually occurred. Halliday , 461 S.W.3d at 54. The defendant bears the burden of showing that plain error has occurred, resulting in manifest injustice or miscarriage of justice. Myles , 479 S.W.3d at 656 (citing State v. Smith , 370 S.W.3d 891, 896 (Mo. App. E.D. 2012) ).
Analysis
In the present case, the verdict directing instructions for the six counts of *569 first-degree statutory sodomy (Counts 3-8) were submitted, in relevant part, as follows:
As to Count 3, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about February 1, 2016, through February 29, 2016 , in the County of Ste. Genevieve, State of Missouri, the defendant knowingly had deviate sexual intercourse with [Victim] by placing his hand on her vagina, and
Second, that at that time [Victim] was a child less than fourteen years old, then you will find the defendant guilty under Count 3 of statutory sodomy in the first degree.
(emphasis added). The instructions for Counts 4-8 are nearly identical, except each differ as to the count and instruction numbers. The verdict directors also differ as to the charged time period for each count.[4]
The verdict directing instructions for the five counts of attempted first-degree statutory sodomy (Counts 9-13) were submitted, in relevant part, as follows:
As to Count 9, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about February 1, 2016, through February 29, 2016 , in the County of Ste. Genevieve, State of Missouri, the defendant asked [Victim] to place her hand on his penis, and
Second, that such conduct was a substantial step toward the commission of the offense of statutory sodomy in the first degree, and
Third, that defendant engaged in such conduct for the purpose of committing such statutory sodomy in the first degree, then you will find the defendant guilty under Count 9 of statutory sodomy in the first degree.
(emphasis added). As above, the instructions for Counts 10-13 are nearly identical, but each differ as to the count and instruction numbers. The verdict directors also differ as to the charged time period for each count.[5]
The verdict directing instructions for the five counts of first-degree child molestation (Counts 16-20) were submitted, in relevant part, as follows:
As to Count 16, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about February 1, 2016, through February 29, 2016 , in the County of Ste. Genevieve, State of Missouri, the defendant touched the breast of [Victim], and
Second, that he did so for the purpose of arousing his own sexual desire, and
Third, [Victim] was less than fourteen years old, then you will find the defendant guilty under Count 16 of child molestation in the first degree.
(emphasis added). The instructions for Counts 17-20, again, each differ as to the *570 count and instruction numbers, as well as the charged time period for each count.[6]
Article I, Section 22(a) of the Missouri Constitution guarantees a criminal defendant the right to a unanimous jury verdict. State v. Celis-Garcia , 344 S.W.3d 150, 155 (Mo. banc 2011) (citing State v. Hadley , 815 S.W.2d 422, 425 (Mo. banc 1991) ). "For a jury verdict to be unanimous, the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." State v. Escobar , 523 S.W.3d 545, 549 (Mo. App. W.D. 2017) (quoting Celis-Garcia , 344 S.W.3d at 155 ). The issue of jury unanimity is implicated in "multiple acts" cases, which arise "when there is evidence of multiple distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Celis-Garcia , 344 S.W.3d at 155-56 (listing factors the court should consider when determining if a case is a multiple acts case). In such cases, the possibility exists that jurors follow the trial court's instructions, yet individually choose differing instances of the crime on which they base the conviction, violating the defendant's right to a unanimous jury verdict. State v. Watson , 407 S.W.3d 180, 184 (Mo. App. E.D. 2013) ; see also State v. Rycraw , 507 S.W.3d 47, 60-63 (Mo. App. E.D. 2016) (providing a graph to demonstrate how a non-unanimous verdict could occur).
Here, the parties agree this is a multiple acts case. The evidence presented at trial was that Armstrong touched Victim's vagina, touched Victim's breasts, and asked Victim to touch his penis in the same manner and in the same location almost every time Victim spent the night at Armstrong's apartment from February 2016 to July 2016. Although Victim testified that all three acts occurred multiple times each month, Armstrong was charged with only a single count of statutory sodomy, attempted statutory sodomy, and child molestation during each of the charged time periods. The counts did not specify one particular incident of statutory sodomy, attempted statutory sodomy, or child molestation on a particular date. Armstrong argues that by failing to specify a particular incident of abuse or instruct the jurors that they must unanimously agree on the same incident to support each conviction, the verdict directing instructions failed to follow the mandates of Celis-Garcia , 344 S.W.3d 150 and State v. Carlton , 527 S.W.3d 865 (Mo. App. E.D. 2017).
In Celis-Garcia , the defendant was charged with two counts of statutory sodomy against two victims. Celis-Garcia , 344 S.W.3d at 152. At trial, the victims testified to at least seven distinct acts of hand-to-genital contact that occurred at different times (some more than three days apart) and in different locations during the same time frame. The victims alleged the acts of sodomy occurred in the bedroom, on the back porch, in the shed, and in the bathroom. Id. at 153, 156. The two identical verdict directors included broad language, permitting the jurors to convict the defendant if they believed "that between the dates of January 01, 2005 and March 31, 2006 ... the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals...."[7] Id. at 154. However, the verdict directors did not specify a distinct *571 location or circumstance, or otherwise identify the particular incident of statutory sodomy that the defendant allegedly committed against each victim. Id. at 154-55. The jury convicted the defendant on both counts.
The Missouri Supreme Court reversed the convictions, concluding the trial court plainly erred in submitting the identical verdict directors. The Court found that "[d]espite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts." Id. at 156. The Court explained that the broad language of the verdict directors "allowed each individual juror to determine which incident he or she would consider in finding [the defendant] guilty of statutory sodomy." Id. Consequently, the jurors could have convicted the defendant if they believed she engaged or assisted in hand-to-genital contact with the victims during an incident in the bedroom or on the back porch or in the shed or in the bathroom. Id.
The Court instructed that a defendant's right to a unanimous jury verdict would be protected in a multiple acts case by either: (1) the State "electing the particular criminal act on which it will rely to support the charge;" or (2) the verdict director "specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred." Id. at 157. The Court declined to address the State's argument "that requiring the [S]tate to differentiate between multiple acts would make it impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts." Id. at 157 n.8. Rather, the Court determined, "The case hypothesized by the [S]tate was not the one presented here because both [victims] provided details of multiple sexual acts that were committed at different times and in different locations." Id.
Recently, in State v. Carlton , this Court confronted a factual scenario similar to the hypothetical the Supreme Court declined to address in the Celis-Garcia footnote. In Carlton , the defendant was charged with two counts of statutory sodomy. Carlton , 527 S.W.3d at 868. The evidence presented at trial was that the defendant repeatedly forced the victim to touch his penis with her hand over an extended time period. The encounters occurred in the mornings while the victim waited for the school bus and also when the victim visited the defendant's apartment to play with his young daughter. Id. at 869. The jury subsequently convicted the defendant of the lesser-included offenses of child molestation. The two identical verdict directors for child molestation allowed the jurors to convict the defendant if they believed "that on or about during 2012 and 2013 ... the defendant caused [the victim] to touch his genitals with her hand...." Id. at 870.[8]
On appeal, this Court reversed the defendant's convictions, finding the submission of the identical verdict directors resulted in plain error. Id. at 878. This Court found that despite evidence of numerous, albeit similar, acts of child molestation, the verdict directors were not modified to ensure the jury unanimously based its convictions on the same underlying criminal acts:
*572 The verdict directors did not caution the jury that they must unanimously agree on the specific acts committed by [the defendant] to support a conviction on either count. The verdict directors erroneously fail to identify any distinguishing characteristics from which jurors would reasonably differentiate between the act upon which they relied to convict [the defendant] on Count I, and the separate act which supported [the defendant's] conviction on Count II.
Id. at 874. As submitted, the verdict directors allowed each juror to independently select two acts of child molestation, out of many acts in evidence, to convict the defendant on each count. Id. at 877. This Court reasoned that some jurors may have believed the abuse only occurred in the mornings while the victim waited for the school bus while other jurors may have believed the abuse only occurred when the victim visited the defendant's apartment to play with his young daughter. Accordingly, there was no way to discern whether the jury unanimously agreed upon the same two acts to support the convictions. Id. at 877-78.
Contrary to Armstrong's contention, we find the facts and verdict directors in Celis-Garcia and Carlton are distinguishable from those in the present case. The evidence in Celis-Garcia was of multiple, distinct acts of sodomy over an extended period of time, which occurred either in the bedroom or on the back porch or in the shed or in the bathroom. Similarly, the evidence in Carlton was of multiple, though similar, acts of child molestation during a period of time, which occurred either in the mornings while the victim waited for the school bus or when the victim visited the defendant's apartment to play with his young daughter. Significantly, in both cases, the trial court submitted two identical verdict directing instructions, even though the record contained evidence that would have allowed the jury to differentiate between the multiple acts of sodomy during the single charged time period. By contrast, in the instant case, the evidence presented was of repeated, identical acts of statutory sodomy, attempted statutory sodomy, and child molestation that occurred in an identical manner and in the same location during each charged time period. Victim did not testify to particular acts on particular dates within each month or differentiate between the multiple acts of abuse. Unlike the identical verdict directors in Celis-Garcia and Carlton , here, the verdict director for each count was distinct, focusing on a single month, and specifying the charged act of either statutory sodomy, attempted statutory sodomy, or child molestation.
We find the facts and circumstances of the present case are more like those in State v. Walker , 549 S.W.3d 7 (Mo. App. W.D. 2018), transfer denied , (July 3, 2018). In Walker , the defendant was charged with two counts of statutory rape against two victims. Id. at 10. The evidence presented at trial was that the defendant had sexual intercourse with the victims in the same manner and same location approximately every other day over a period of time. Id. at 11. The defendant was charged with one count of statutory rape for each victim. Each count specified the month in which the act of statutory rape occurred but did not specify a particular act of statutory rape on a particular date. Id. The verdict director for the first count allowed the jurors to convict the defendant if they believed "that on or about May 2014 ... the defendant knowingly had sexual intercourse with [victim #1] in defendant's bedroom in Burlington Junction[.]" The verdict director for the second count allowed the jurors to convict the defendant if they believed "that on or about January 2011 ... the defendant knowingly had sexual *573 intercourse with [victim #2] in defendant's bedroom in Burlington Junction every time her Mom went to Wal-Mart." Id. at 10. The jury convicted the defendant on both counts.
On appeal, the defendant argued the trial court erred in submitting the verdict directors because they failed to specify a particular incident or instruct the jury that it must unanimously agree on the same incident, which ran afoul of Celis-Garcia . Id. at 10-11. The Western District disagreed, finding Celis-Garcia was distinguishable from the case before it:
While the evidence for each victim in Celis-Garcia showed that multiple acts of sodomy occurred at different, specified locations over an extended time period, the evidence for each victim in this case showed that multiple acts of statutory rape occurred in an identical manner in the same location approximately every other day over a period of time.
Id. at 11-12. The Western District likened its case to the hypothetical referenced in the Celis-Garcia footnote, as the victims testified to "repeated, identical sexual acts committed at the same location during a particular time span, and they were unable to testify to specific acts on specific dates." Id. at 12. As such, the verdict directors focused on a single month, and any evidentiary fact that could distinguish one incident of rape from another was included in the verdict directors.[9] The Court concluded that "[t]he factual findings required by each verdict director rendered it impossible for the jurors to differentiate between the repeated, identical acts of statutory rape that fell within each of the verdict directors." Id. Accordingly, the defendant's right to a unanimous jury verdict was not violated because the jurors had no evidentiary basis upon which to differentiate between the repeated acts. Id. Notably, as to the first count, the Court concluded the fact that sexual acts on different dates within the month of May "could theoretically have been relied on by the jurors in finding [the defendant] guilty cannot demonstrate a violation of the right to a unanimous verdict when the record contains no evidentiary basis for the jurors to distinguish between those acts." Id.
Here, as in Walker , Victim testified to repeated, identical acts of statutory sodomy, attempted statutory sodomy, and child molestation committed in the same manner and location during each charged time period. The evidence presented was that the abuse always occurred in Victim's bedroom at Armstrong's apartment in Ste. Genevieve. Victim testified that when she stayed overnight at the apartment, Armstrong would come into her bedroom at night, touch her vagina and breasts, and try to get her to touch his penis. Although Victim testified that all three acts occurred multiple times each month, as in Walker , Victim was unable to testify to particular acts on particular dates or distinguish between the repeated, identical acts in any way. Consequently, the verdict director for each count focused on a single month, and specified the charged act of either statutory sodomy for placing his hand on Victim's vagina, attempted statutory sodomy for asking Victim to place her hand on his penis, or child molestation for touching Victim's breasts. The record is devoid of any other evidentiary facts that could have been included in each verdict director to distinguish one act of abuse from another.[10] Moreover, there was no need to instruct *574 the jurors that they must agree upon the same incident to support each conviction because there was absolutely no evidentiary basis upon which the jurors could possibly differentiate between the repeated, identical acts that fell within each verdict director. Simply put, there was no risk the jurors would base the convictions on different underlying criminal acts. Therefore, Armstrong's right to a unanimous jury verdict was not violated.
We find the trial court did not plainly err in submitting the verdict directing instructions for the sixteen separate counts of first-degree statutory sodomy, attempted first-degree statutory sodomy, and child molestation. Points I-XVI are denied.
Points XVII-XIX-Sufficiency of the Evidence
In Points XVII-XIX, Armstrong argues the trial court erred in overruling his motions for judgment of acquittal, and imposing sentence and judgment upon him as to Count 14 (attempted first-degree statutory sodomy), Count 21 (first-degree child molestation), and Count 15 (first-degree statutory sodomy) because there was insufficient evidence presented at trial to support the convictions.
Standard of Review
In reviewing a challenge to the sufficiency of the evidence, our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. State v. Stallman , 289 S.W.3d 776, 778 (Mo. App. E.D. 2009). We consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary. Id. When reviewing the sufficiency of the evidence supporting a criminal conviction, this Court does not act as a "super juror" with veto powers but should give great deference to the trier of fact. State v. Williams , 277 S.W.3d 848, 852 (Mo. App. E.D. 2009). As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony. State v. Cook , 339 S.W.3d 523, 528 (Mo. App. E.D. 2011).
Analysis
A. Points XVII and XVIII-Attempted First-Degree Statutory Sodomy and First-Degree Child Molestation
Armstrong argues the trial court erred in overruling his motions for judgment of acquittal, and imposing sentence and judgment upon him as to Count 14 (attempted first-degree statutory sodomy) and Count 21 (first-degree child molestation). Specifically, Armstrong contends insufficient evidence was presented from which a reasonable juror could have found that he asked Victim to touch his penis and that he touched Victim's breasts in July 2016 due to the fact that Victim did not claim these incidents happened during that time period either during her testimony at trial or at her CAC interview. We disagree.
Count 14 alleged Armstrong "committed the felony of attempted statutory sodomy in the first degree ... in that on or about July 1, 2016, through July 30, 2016 ... the *575 defendant for the purpose of arousing or gratifying the sexual desire of the defendant asked [Victim] to place her hand on his penis...." Count 21 alleged Armstrong "committed the class B felony of child molestation in the first degree ... in that on or about July 1, 2016 through July 30, 2016 ... the defendant knowingly subjected [Victim] who was then less than fourteen years old to sexual contact by touching her breasts."
Viewing the evidence and accepting all reasonable inferences drawn therefrom in the light most favorable to the verdict, we find the State presented sufficient evidence from which a reasonable juror might have found beyond a reasonable doubt that Armstrong asked Victim to touch his penis and touched Victim's breasts on or about July 1, 2016, through July 30, 2016. See Stallman , 289 S.W.3d at 778. Victim unequivocally stated that from March 2016 until July 2016, almost every time she stayed overnight at Armstrong's apartment, he would come into her bedroom, touch her breasts, and try to get her to touch his penis. Even after Victim moved in with her grandparents in mid-May 2016, she continued to spend weekends at Armstrong's apartment until she refused to go after the last incident in late July 2016. Mother similarly testified that Victim stayed overnight at Armstrong's apartment from March 2016 until July 2016. Mother testified that around late July 2016, Victim would "throw a fit" when she had to spend the night at Armstrong's apartment, and Mother would have to force Victim to go. Mother stopped forcing Victim to go in August or September. Additionally, in her CAC interview, Victim stated Armstrong touched her breasts and tried to get her to touch his penis between February 2016 and July 2016, though, she did not state how many times these acts occurred during each month.
We acknowledge Armstrong's argument that the Victim did not testify to the specific number of times he touched her breasts and asked her to touch his penis in July 2016, nor did Victim state in her CAC interview how many times these acts occurred. However, "[e]vidence is sufficient to support guilt if any reasonable inference supports guilt, even if other 'equally valid' inferences do not." State v. Jones , 519 S.W.3d 818, 824 (Mo. App. E.D. 2017) (quoting State v. Putney , 473 S.W.3d 210, 219 (Mo. App. E.D. 2015) ). As detailed above, both Victim and Mother testified that Victim stayed overnight at Armstrong's apartment through the end of July 2016. Victim unequivocally testified that almost every time she stayed overnight, Armstrong touched her breasts and asked her to touch his penis. From this evidence, a reasonable juror could infer that Armstrong committed the charged acts in July 2016. See State v. Bonich , 289 S.W.3d 767, 772 (Mo. App. S.D. 2009) ("[A] jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit[.]"). Furthermore, it was well within the jury's discretion to find credible Victim's testimony that the charged acts occurred in July as "[i]t is the jury's responsibility to assess the weight and credibility of the witnesses[.]" State v. Johnson , 461 S.W.3d 842, 845 (Mo. App. E.D. 2015). We defer to the jury's factual determinations when, as in this case, they are supported by sufficient evidence. See State v. Porter , 439 S.W.3d 208, 212 (Mo. banc 2014) (appellate court is not "super juror" with power to override factual determinations supported by sufficient evidence).
We find the trial court did not err in overruling Armstrong's motions for judgment of acquittal, and imposing sentence and judgment on the charges of attempted first-degree statutory sodomy and first-degree *576 child molestation. Points XVII and XVIII are denied.
B. Point XIX-First-Degree Statutory Sodomy
Armstrong argues the trial court erred in overruling his motions for judgment of acquittal, and imposing sentence and judgment upon him as to Count 15 (first-degree statutory sodomy). Specifically, Armstrong contends insufficient evidence was presented from which a reasonable juror could have found he placed his penis on Victim's mouth. We disagree.
"A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062.1. "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person ... for the purpose of arousing or gratifying the sexual desire of any person[.]" Section 566.010(1) RSMo 2000 (Cum. Supp. 2007). Count 15 alleged Armstrong "committed the felony of statutory sodomy in the first degree ... in that on or about June 1, 2016, to July 30, 2016 ... the defendant for the purpose of arousing or gratifying the sexual desire of defendant, had deviate sexual intercourse with [Victim], who was then less than fourteen years old, by placing his penis on her mouth."
At trial, Victim testified that one night in July 2016, she was asleep in a recliner chair in Armstrong's apartment. Armstrong woke Victim, and told Victim to lean her head back and close her eyes. Victim felt "[s]omething on my lips," opened her eyes, and saw it was Armstrong's penis. On appeal, Armstrong argues Victim's testimony was insufficient to support the conviction because the evidence presented was that he only touched his penis to Victim's "lips," and not her "mouth." Armstrong contends the words "lips" and "mouth" are not interchangeable. We find Armstrong's argument is entirely without merit.
Although not statutorily defined, the dictionary defines "lip" as "either of the two fleshy folds which surround the orifice of the mouth in man and many vertebrates[,]" and "this part of the mouth considered as an organ of speech." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1318 (2002) (emphasis added). Under this definition, the lips are undoubtedly part of the anatomy of the mouth. For example, when two people kiss on the mouth, the part of the mouth that is touching are the lips. Here, we note Armstrong was charged with placing his penis "on her mouth" not "in her mouth." As such, when Victim testified Armstrong placed his penis on her lips, his penis was clearly on her mouth. See State v. Bryan , 60 S.W.3d 713, 715 (Mo. App. S.D. 2001) (finding the defendant's actions constituted deviate sexual intercourse when he "plac[ed] his penis on [the victim's] lips," and attempted to or did place his penis against the victim's lips to arouse or gratify his sexual desire). The mere fact that Victim, a minor child, used a different, yet entirely reasonable, word to describe her mouth does not preclude a finding that Armstrong's actions constituted deviate sexual intercourse. See State v. Ray , 407 S.W.3d 162, 167 (Mo. App. E.D. 2013) ("The fact that children, 'in their testimony, [use] unsophisticated language different from that of the statute to describe that part of their bodies' does not preclude an inference of contact."). Moreover, Armstrong admitted in the videotaped police interview that he took his penis out and tried to get Victim to perform oral sex on him in the recliner chair.
Furthermore, Armstrong has cited no authority to support his proposition that a *577 defendant's act of placing his genitals on the lips of another person falls outside the definition of "deviate sexual intercourse." Rather, Armstrong cites to State v. Tolen , in which this Court concluded evidence that the defendant touched the victim's "butt" or "buttocks" is insufficient to show the defendant touched the victim's "anus." State v. Tolen , 295 S.W.3d 883, 887 (Mo. App. E.D. 2009). Armstrong contends that "[t]he buttocks are near the anus in the same way that the lips are near the mouth, however this proximity is not enough to say that the two are one in the same." We find this argument unpersuasive. When a person touches the buttocks of another, it cannot be said he actually touches the anus. However, as explained above, when a person touches the lips of another, he is inevitably touching the mouth. Accordingly, Victim's testimony that Armstrong's penis touched her lips was sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that Armstrong placed his penis on her mouth. See Stallman , 289 S.W.3d at 778.
We find the trial court did not err in overruling Armstrong's motions for judgment of acquittal, and imposing sentencing and judgment on the charge of first-degree statutory sodomy. Point XIX is denied.
Conclusion
Finding no error, we affirm the judgment of the trial court.
Roy L. Richter, P.J., and Robert M. Clayton III, J., concur

All further statutory references are to RSMo (2000), unless otherwise indicated.

Armstrong does not challenge his two convictions for attempted first-degree statutory rape.

All rule references are to Missouri Supreme Court Rules (2017), unless otherwise indicated.

The charged time periods related to each count are as follows: Count 4 was charged as occurring on or about March 1, 2016, through March 30, 2016; Count 5 was on or about April 1, 2016, through April 30, 2016; Count 6 was on or about May 1, 2016, through May 31, 2016; Count 7 was on or about June 1, 2016, through June 30, 2016; and Count 8 was on or about July 1, 2016, through July 30, 2016.

The charged time periods related to each count are as follows: Count 10 was charged as occurring on or about March 1, 2016, through March 30, 2016; Count 11 was on or about April 1, 2016, through April 30, 2016; Count 12 was on or about May 1, 2016, through May 31, 2016; and Count 13 was on or about June 1, 2016, through June 30, 2016.

The charged time periods related to each count are as follows: Count 17 was charged as occurring on or about March 1, 2016, through March 30, 2016; Count 18 was on or about April 1, 2016, through April 30, 2016; Count 19 was on or about May 1, 2016, through May 31, 2016; and Count 20 was on or about June 1, 2016, through June 30, 2016.

The language in the two verdict directors was identical, only substituting the name of each victim.

The language in the two verdict directors only differed as to the count and instruction numbers. Nothing else distinguished the verdict directors for Counts I and II.

The Western District noted that although victim #1 testified that some acts of statutory rape might have occurred in the bathroom, the verdict director specifically required the jury to find the act occurred "in defendant's bedroom." Id. at 12 n.1.

While the verdict directors in Walker were more specific as to the location of the abuse (i.e., "in defendant's bedroom in Burlington Junction" and "in defendant's bedroom in Burlington Junction every time her Mom went to Wal-Mart"), we do not find the absence of a specific location in the present verdict directors violated Armstrong's right to a unanimous jury verdict because Victim testified the abuse always occurred in the same place, and she never gave an alternate location. By contrast, in Walker , victim #1 testified the abuse might have also occurred in the bathroom.