

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED105699 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Christopher E. McGraugh |
| ROBERT L. HENRY, | ) | |
| | ) | |
| Appellant. | ) | Filed: January 29, 2019 |

## Introduction

Robert L. Henry was charged with one count of first-degree statutory rape and three counts of first-degree statutory sodomy to S.B., born in 2002, and three counts of first-degree statutory sodomy to T.B., born in 2006. S.B., T.B. (collectively "Victims"), and Victims' mother ("Mother") periodically lived with Henry and Henry and Mother's sons at different locations in 2012 and 2013. Henry was tried on the charges in May 2017. The jury convicted Henry of one count of first-degree statutory rape (count I) and three counts of first-degree statutory sodomy (counts II through IV) arising out of charges of first-degree statutory rape and sodomy to S.B. from March 1, 2012, to February 3, 2013, in the City of St. Louis. The jury could not reach a unanimous verdict on the three counts of first-degree statutory sodomy to T.B. resulting in a mistrial on counts V through VII. Henry was sentenced to concurrent terms of twenty years of imprisonment on counts I through IV.

On appeal, Henry raises four points: (1) the trial court plainly erred in submitting the verdict directors for counts I through IV because they failed to ensure the jury reached a unanimous verdict; (2) the trial court abused its discretion in denying his motion for a new trial because the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence indicating that S.B. was pregnant when the case was tried; (3) the trial court clearly erred in denying his motion to dismiss the charges based on the State's failure to bring him to trial within 180 days of its receipt of his request for a speedy trial under the Uniform Mandatory Disposition of Detainers Law (UMDDL), § 217.450 *et seq.*[1]; and (4) the trial court clearly erred in denying his motion to dismiss the State's charges against him because § 56.087 is unconstitutional. The State concedes error for part of Point I, instructional error regarding Counts III and IV. We find the instructional error in point I constitutes plain error with regard to count IV. The judgment and sentence of conviction on Count IV is reversed and remanded for new trial. The sentence and judgment as to all other counts is affirmed.

**Factual and Procedural Background**

We review the evidence in the light most favorable to the jury's verdict. *State v. McCauley*, 528 S.W.3d 421, 423 (Mo. App. E.D. 2017). Additional facts will be provided to the address the specific points when necessary.

Henry was charged with seven counts: 1) first-degree statutory rape against S.B. from March 1, 2012, to June 1, 2012; 2) first-degree statutory sodomy against S.B. from March 1, 2012, to June 1, 2012; 3) first-degree statutory sodomy against S.B. from June 1, 2012, to February 3, 2013; 4) first-degree statutory sodomy against S.B. from July 1, 2012, to February 3, 2013; 5) first-degree statutory sodomy against T.B. from March 1, 2012, to June 30, 2012; 6) first-degree

---

[1] All statutory references are to RSMo (2012) unless otherwise indicated.

statutory sodomy against T.B. from June 1, 2012, to February 3, 2013; and 7) first-degree statutory sodomy against T.B. from February 1, 2013, to February 3, 2013.  Trial began May 22, 2017.

At trial, the State presented evidence establishing that Mother reported the crimes alleged against Henry on February 3, 2013.  A detective for the St. Louis police department testified he investigated the crimes alleged against Henry and arranged for a forensic interview of Victims but only S.B. was interviewed because T.B. was taken by her father.

The State presented evidence from Mother establishing where Mother and Victims lived during the relevant time periods.  The evidence established that Henry, Mother, and the children lived on Cook St. in a one-bedroom apartment in the City of St. Louis from March 1, 2012, to June 1, 2012, and at various other locations in the City of St. Louis thereafter, including Mother's sister's on Carr St. in the City of St. Louis from July 2012 until December 2012 before moving into a shelter.

T.B. was eleven years old at the time of trial.  T.B. testified that Henry made her suck his "thing" at their apartment, at Mother's sister's house, and in a porta potty.

S.B. was fifteen years old at the time of trial.  S.B. testified that while they were living on Cook St. Henry stuck his penis inside of her and made her suck his penis.  S.B. testified that Henry made her suck his penis numerous times in the laundry room at Mother's sister's house.  S.B. testified Henry made her suck his penis in a porta potty while she living with Mother's sister.

S.B.'s interview of February 7, 2013, was played for the jury.  In that interview, she testified that Henry put his private part in her and made her suck his private part while they were living on Cook St.  She testified that Henry made her suck his private part while sitting on the toilet seat in the bathroom at Carr St.

The jury found Henry guilty on the four counts related to S.B. but could not reach a unanimous verdict on the three counts related to T.B. and a mistrial was declared on those counts. This appeal follows.

**Discussion**

I. *Plain Error Review of Henry's Right to Unanimous Jury Verdict*

In point I, Henry concedes he did not preserve this claim but contends the trial court plainly erred in submitting the verdict directors for counts I through IV because they failed to ensure the jury reached a unanimous verdict. Specifically, Henry argues the verdict directors failed to sufficiently differentiate between the multiple sex acts underlying each count. The State concedes the trial court erred in submitting the verdict directors for counts III and IV but argues the court only committed plain error regarding count IV because the State contends the verdict director for count III resulted in no manifest injustice due to the State differentiating the acts for counts III in closing argument. The State argues the trial court did not commit plain error in submitting the verdict directors for counts I and II because jury unanimity on one specific event was not required for these offenses given the nature of Henry's repeated, identical assaults of S.B., which provided no evidentiary basis for the jurors to distinguish between those acts. We reverse and remand Henry's conviction on count IV for a new trial but affirm his convictions on counts I, II, and III.

An unpreserved claim of error can be reviewed only for plain error. *State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011). Plain error requires a finding of manifest injustice or miscarriage of justice resulting from the trial court's error. *Id.* "For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." *Id.* (internal quotations omitted).

4

The Missouri Constitution protects the right to a unanimous jury verdict. MO. CONST. art. I, § 22(a); *Celis-Garcia*, 344 S.W.3d at 155. For a jury verdict to be unanimous, the jurors must be in substantial agreement on the defendant's acts. *Celis-Garcia*, 344 S.W.3d at 155.

A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count. *Id.* at 155-56. In multiple acts cases, the possibility exists that jurors follow the trial court's instructions, yet individually choose differing instances of the crime on which they base the conviction, violating the defendant's right to a unanimous jury verdict. *State v. Watson*, 407 S.W.3d 180, 184 (Mo. App. E.D. 2013).

In *Celis-Garcia*, the Missouri Supreme Court considered a multiple acts case involving at least seven separate acts of statutory sodomy with two victims at different times and in four possible locations. The verdict directors failed to differentiate between the acts and allowed the jury to find the defendant guilty if she "engaged or assisted in hand-to-genital contact with the children during an incident in her bedroom, *or* on the enclosed porch, *or* in the shed, *or* in the bathroom." *Celis-Garcia*, 344 S.W.3d at 156.

On appeal, the defendant conceded she failed to object to the verdict directors and requested the Court review her claim that her right to a unanimous jury verdict was violated for plain error. *Id.* at 154. The Court found the verdict directors were erroneous because they permitted the jury to convict the defendant of two counts of sodomy without identifying the facts the jurors were to agree she committed. *Id.* at 158.

The Court held that "a defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts

presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred." *Id.* at 157. The Court declined to address the State's argument it would be "impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts" because it was not the case presented to the Court since both victims "provided details of multiple sexual acts that were committed at different times and in different locations." *Id.* at 157 n.8.

Having determined the trial court erred, the Court considered whether the error resulted in manifest injustice or a miscarriage of justice. *Id.* at 158. The Court noted that "[u]nlike some statutory sodomy cases in which the defense simply argues that the victims fabricated their stories, [the defendant] sought to exploit factual inconsistencies and raise doubts about the plausibility of the specific incidents of statutory sodomy alleged by her daughters." *Id.* The Court found "the fact that [the defendant] relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact makes it more likely that individual jurors convicted her on the basis of different acts." *Id.* at 159. The Court found the error affected the verdict and resulted in manifest injustice. *Id.*

In *State v. Escobar*, 523 S.W.3d 545 (Mo. App. W.D. 2017), the defendant was accused by his step-daughter of repeated acts of molestation. At trial, the victim testified each morning beginning in November of 2012 when she was twelve years old, the defendant would touch her breasts, thighs, and sometimes her vagina with his hands for about fifteen minutes until victim was told to get up and get ready for school. The victim testified this touching repeatedly occurred almost every morning she had school until the defendant's sons moved into their home in April of 2013. The defense presented no witnesses or evidence, but argued in closing the victim's

6

allegations were not credible. The defendant's theory in closing argument was the victim lied because she wanted to get her mother out of her relationship with the defendant.

The State submitted to the jury two counts of first-degree child molestation based on the identical allegation that the defendant touched the victim's breast for the purpose of arousing or gratifying his sexual desire. Count I was for the period between November 1, 2012, and February 1, 2013. Count II was for the period between February 2, 2013, and April 1, 2013. The defendant did not object to the instructions. In closing argument, the State explained to the jury that count I was for the first incident of child molestation the victim could remember and count II was for the last incident of molestation she could remember. The jury found the defendant guilty on both counts.

On appeal, the defendant argued the trial court plainly erred because this was a multiple-acts case and the instructions allowed the jury to find the defendant guilty without unanimously agreeing on a specific incident of abuse. The court found the facts presented "the scenario the Supreme Court declined to address in *Celis-Garcia*—sexual abuse of a minor with repeated, independent, identical acts of sexual abuse committed in the same location over a duration of time." *Id.* at 551. The court found that while the State attempted to elect the first and last instances of abuse the victim could remember and explained this to the jury in closing argument, this did not "cure the failure of the State to specify in the jury instructions the two instances of conduct to support the charges as we must presume that the jury followed the jury instructions as written not the State's closing argument." *Id.* The court concluded "the trial court erred in failing to submit to the jury verdict directors sufficiently describing the underlying criminal acts charged in order to ensure that the jury would be unanimous as to the criminal act." *Id.*

Despite finding the trial court erred, the court concluded the defendant failed to meet his burden to prove manifest injustice or a miscarriage of justice. *Id.* at 553. Differentiating *Celis-Garcia*, the court reasoned:

> In this case, [the defendant] did not present an incident-specific defense but rather generally denied all of the allegations as a whole and argued [the victim] had fabricated her story because she wanted her mother to leave [the defendant]. There was no conflicting evidence presented by [the defendant] to contest [the victim's] allegations other than a general denial that any of the abuse had occurred. [The defendant] presented no incident specific evidence to contest either of the two specifically described instances of abuse—the first and last acts of abuse [the victim] could remember. The members of the jury had to decide whether they found [the victim's] testimony credible, and [the defendant's] convictions show that they did so. Given the totality of the circumstances, the nature of [the victim's] testimony, and [the defendant's] defense, there is no reasonable argument that the alleged error affected the verdict.

*Id.* at 552-53; cf. *State v. Drake*, 514 S.W.3d 633, 641 (Mo. App. W.D. 2017) (summarily concluding that "[b]ecause the provided instructions were not specific and the jury was not told to unanimously agree on at least one specific act, it is clear that the verdict directors misdirected the jury in a way that affected the verdict.").

In *State v. Carlton*, 527 S.W.3d 865 (Mo. App. E.D. 2017), this court also considered a case it found "precariously close to the hypothetical proffered in *Celis-Garcia*." *Id.* at 872. In *Carlton*, the defendant was charged with two counts of first-degree statutory sodomy alleging the defendant forced the victim to touch his penis with her hand. At trial, the victim testified that when she was seven years old every morning before school the defendant would force her to touch his penis. The victim's CAC interview was played for the jury. In the interview, the victim stated the defendant forced her to touch him in the mornings before school, but also claimed the defendant forced her to touch him at other times when she would visit his apartment to play with his younger daughter. The trial court instructed the jury on two counts of first-degree statutory sodomy and on the lesser-included offense of first-degree child molestation. All counts alleged generally that on

8

or about 2012 to 2013 the defendant knowingly placed the victim's hand on the defendant's genitals. The defendant did not object to the instructions or raise any instructional error in his motion for a new trial. The jury found the defendant guilty of first-degree child molestation on both counts.

On appeal, the defendant claimed the trial court committed plain error by submitting the child-molestation verdict directors because they failed to specify a particular incident or instruct the jurors they must unanimously agree upon the same incident to convict in violation of the defendant's constitutional right to a unanimous jury verdict under *Celis-Garcia*. The court found the record contained evidence that allowed the jury to differentiate between the various acts, noting that the victim explained that the abuse occurred in the mornings before school, but also "when she arrived at Carlton's apartment *at other times to play with his young daughter*." *Id.* at 873 (emphasis in original). This court concluded "the verdict directors as submitted allowed each member of the jury, independently from each other, to select two acts of child molestation, out of many acts in evidence, to convict [the defendant] on Counts I and II." *Id.* at 877. The court explained "[t]he verdict-director did not require the jurors to settle upon which individual act supported the conviction; they needed only to find that [the defendant] committed two acts at sometime over an extended period." *Id.* The court ruled that "[b]ecause the identical instructions lacked the requisite specificity and did not otherwise ensure that the jury unanimously agreed on any given specific acts, the verdict directors for Counts I and II were, on their face, plainly erroneous." *Id.*

Having found plain error, the court considered whether the error resulted in manifest injustice. *Id.* The court noted that in closing argument "[r]ather than correctly informing the jury that it must unanimously agree upon the same first act and the same second act, the State asked

the jury to find that *any act* fitting within the set of instructions on Count I to have occurred and then to find that *any second act* fitting within the set of identical instructions on Count II to have occurred." *Id.* The court found that "[t]he State made no attempt in closing argument to tie the statutory-sodomy charges, and the corresponding lesser-included offenses of child molestation, to any specific act or acts in order to make it clear to the jury what each count represented." *Id.* at 877-78. The court concluded that "[i]nstead of recognizing the requirements of *Celis-Garcia* by either accentuating the individual characteristics of the differing incidents of abuse, or otherwise providing an instruction ensuring the jury unanimously agreed on the same underlying act to convict, the State simply asked the members of the jury to survey the evidence and, for each count, select some instance of abuse to support a conviction on two indistinguishable verdict directors." *Id.* at 878. The court deduced that "the plainly erroneous verdict directors created a juror free-for-all that resulted in manifest injustice by negating [the defendant's] constitutional right to a unanimous jury verdict." *Id.*

In *State v. Walker*, 549 S.W.3d 7 (Mo. App. W.D. 2018), the defendant was charged with two counts of statutory rape against two victims. The evidence showed the first victim lived with the defendant between 2010 and 2012 when she was between nine and eleven years old and the defendant had sexual intercourse with the victim in his bedroom every time the victim's mother went to Walmart. On the second victim, the evidence established the victim lived with the defendant from 2009 until 2014 when she was between nine and fourteen years old and the defendant began having sexual intercourse with her when she was ten years old. The evidence showed that in May 2014 the defendant had sex with the second victim every other day. The verdict director for the second victim allowed the jurors to convict the defendant if they believed that on or about May 2014, the defendant knowingly had sexual intercourse with the victim in the

10

defendant's bedroom. The verdict director for the first victim allowed the jurors to convict the defendant if they believed that on or about January 2011, the defendant knowingly had sexual intercourse with the victim in the defendant's bedroom every time the first victim's mother went to Walmart. The jury found the defendant guilty on both counts.

On appeal, the defendant argued the trial court erred in submitting the verdict directors for the first-degree statutory rape counts because they failed to specify a particular incident or to instruct the jury it must unanimously agree on the same incident. The court found that "[w]hile the evidence for each victim in *Celis-Garcia* showed that multiple acts of sodomy occurred at different, specified locations over an extended period of time, the evidence for each victim in this case showed that multiple acts of statutory rape occurred in an identical manner in the same location approximately every other day over a period of time." *Id.* at 11-12. The court concluded that like the victim in the hypothetical referenced in *Celis-Garcia*, the victims "testified to repeated, identical sexual acts committed at the same location during a particular time span, and they were unable to testify to specific acts on specific dates." *Id.* at 12. The court ruled "[t]he factual findings required by each verdict director rendered it impossible for the jurors to differentiate between the repeated, identical acts of statutory rape that fell within each of the verdict directors." *Id.* The court held that "[b]ecause the jurors had no evidentiary basis upon which to differentiate between these repeated acts, [the defendant's] right to a unanimous verdict was not at risk of being violated." *Id.* The court noted that "the fact that acts on different dates within the month of May 2014 could theoretically have been relied on by the jurors in finding [the defendant] guilty cannot demonstrate a violation of the right to a unanimous verdict when the record contains no evidentiary basis for the jurors to distinguish between the those acts." *Id.* Thus, the court found neither verdict director violated the defendant's right to a unanimous jury verdict. *Id.*

11

In *State v. Armstrong*, 560 S.W.3d 563 (Mo. App. E.D. 2018), this court distinguished *Celis-Garcia*. *Id.* at 572. *Armstrong* was a multiple acts case involving multiple counts of statutory sodomy, attempted statutory sodomy, and child molestation. The evidence presented at trial was that the defendant touched the victim's vagina and breasts, and asked the victim to touch his penis in the same manner and location almost every time the victim spent the night at the defendant's apartment from February 2016 to July 2016. The defendant was charged with only a single count of statutory sodomy, attempted statutory sodomy, and child molestation for each time period charged. The defendant was convicted of each charge. On appeal, the defendant argued that by failing to specify a particular incident of abuse or instruct the jurors they must unanimously agree on the same incident to support each conviction, the verdict directing instructions failed to follow the mandates of *Celis-Garcia* and *Carlton*.

This court found the facts and verdict directors in *Celis-Garcia* and *Carlton* distinguishable. *Id*. Specifically, the court found "[t]he evidence in *Celis-Garcia* was of multiple, distinct acts of sodomy over an extended period of time, which occurred in the bedroom *or* on the back porch *or* in the shed *or* in the bathroom." *Id.* The court found "the evidence in *Carlton* was of multiple, though similar, acts of child molestation during a period of time, which occurred either in the mornings while the victim waited for the school bus *or* when the victim visited the defendant's apartment to play with his young daughter." *Id.* The court found it significant in both cases that "the trial court submitted two identical verdict directing instructions, even though the record contained evidence that would have allowed the jury to differentiate between the multiple acts of sodomy during the single charged time period." *Id.* The court differentiated *Celis-Garcia* and *Carlton* by pointing out "the evidence presented was of repeated, identical acts of statutory sodomy, attempted statutory sodomy, and child molestation that occurred in an identical manner

12

and in the same location during each charged time period." *Id.* The court noted that the victim "did not testify to particular acts on particular dates within each month or differentiate between the multiple acts of abuse." *Id.* The court concluded that unlike the identical verdict directors in *Celis-Garcia* and *Carlton*, "the verdict director for each count was distinct, focusing on single month, and specifying the charged act of either statutory sodomy, attempted statutory sodomy, or child molestation." *Id.*

This court determined the facts and circumstances before it were more like *Walker*. *Id*. The court noted that "as in *Walker*, Victim testified to repeated, identical acts of statutory sodomy, attempted statutory sodomy, and child molestation committed in the same manner and location during each charged time period." *Id.* at 573. The court stated:

> Although Victim testified that all three acts occurred multiple times each month, as in *Walker*, Victim was unable to testify to particular acts on particular dates or distinguish between the repeated, identical acts in any way. Consequently, the verdict director for each count focused on a single month, and specified the charged act of either statutory sodomy for placing his hand on Victim's vagina, attempted statutory sodomy for asking Victim to place her hand on his penis, or child molestation for touching Victim's breasts. The record is devoid of any other evidentiary facts that could have been included in each verdict director to distinguish one act of abuse from another. Moreover, there was no need to instruct the jurors that they must agree upon the same incident to support each conviction because there was absolutely no evidentiary basis upon which the jurors could possibly differentiate between the repeated, identical acts that fell within each verdict director. Simply put, there was no risk the jurors would base the convictions on different underlying criminal acts. Therefore, [the defendant's] right to a unanimous jury verdict was not violated.

*Id.* at 573-74.

Here, counts I through IV were the charges brought against Henry related to S.B. Count I was for first-degree statutory rape and counts II, III, and IV were for first-degree statutory sodomy. The verdict director for count I instructed the jury to find Henry guilty if it found beyond a reasonable doubt "that on or about March 1, 2012 to June 1, 2012, in the City of St. Louis, State

of Missouri, the defendant knowingly had sexual intercourse with [S.B.]." The verdict director for count II was the same as for count I except it alleged Henry "knowingly put his penis in the mouth of [S.B.]."

The verdict director for count III instructed the jury to find Henry guilty if it found beyond a reasonable doubt "that on or about June 1, 2012 to February 3, 2013, in the City of St. Louis, State of Missouri, the defendant knowingly put his penis in the mouth of [S.B.]." The verdict director for count IV instructed the jury to find Henry guilty if it found beyond a reasonable doubt "that on or about July 1, 2012 to February 3, 2013, in the City of St. Louis, State of Missouri, the defendant knowingly put his penis in the mouth of [S.B.]."

At trial, S.B. testified the abuse happened in the laundry room on Carr St. She testified about exhibit 1F, a photograph of the laundry room, and how Henry would move a trash can. She testified this happened multiple times. On cross-examination, she testified the laundry room is the only place the abuse occurred while on Carr St. She testified that when they stayed on Cook "[s]ome days he'll insert his penis inside of my lady part," and "[s]ome days he'll make me suck his penis."

In the CAC interview, S.B. testified Henry made her suck his private several times. She testified this happened on Cook St. and on Carr St. She testified Henry tried to put his private part in her on Henry's bed on Cook St. She also made her suck his private part there. She testified her brothers and sisters would sometimes see this on Cook St. He testified she spit on her private part. She testified it only happened in the bedroom at Cook St. She testified she was sitting on the toilet seat in the bathroom at Carr St. when she sucked Henry's private part.

In closing, the State argued Henry was charged with first-degree statutory rape for the sexual intercourse with S.B. on Cook, and for six counts of first-degree statutory sodomy for his

14

acts against S.B. and T.B. on Cook and Carr in the City of St. Louis. The State argued Victims only lived on Cook from March 2012 to June 2012 and then they lived on Carr from the beginning of July 2012 through February 2013. The State argued S.B. "explained to you that at Cook Street, he put his penis in her privates," and that "Count I, instruction five, has outlined for you that he is charged with [putting his] penis in her private during this time period on Cook." The State explained that "Count II has her, as she put it, using her mouth to suck his penis. He made her suck his penis while they were on Cook." On counts III and IV, the State argued:

> This occurred at [Mother's sister's] house. This occurred as Count III. He put his penis in her mouth while at [Mother's sister's] apartment. She discussed and showed you in the pictures where he would stand and move the trash can and he would stand against the wall and then she would stand in front of the trash can and either kneel or get on her knees and suck his penis.

In Henry's closing, the defense argued he had to defend against a broad range of dates, that the "evidence in this case is words and words only," there was no physical evidence against him, and he was not guilty of the charges. Henry argued there was no corroborating evidence to support Victims' words and "those words are not proof beyond a reasonable doubt . . . because of the inconsistency within those words." Specifically, Henry argued that Mother's testimony and Victims' testimony about the porta potty incident was inconsistent. He argued Mother's testimony was she was at the house cooking chicken when she found them in the park near a porta potty and S.B.'s testimony is Mother is at the park with them and Henry asked Mother to go get some pizza and it happened when she left.

As for the incidents on Carr, Henry pointed out that S.B. said the acts "on Carr happened in the laundry room but when you watch the video from 2013, she talks to [the forensic interviewer] and she says that these incidents happen in the bathroom, and she tells [the forensic interviewer] it's a one bathroom apartment." Henry argued that a fight between Henry and Mother about

15

Mother lying to Henry about Mother's contact with S.B.'s father proceeded S.B.'s allegations against Henry. Henry argued S.B. did not like the way Henry treated Mother and S.B.'s "father was the outlet for her to get away and to take her mom with her and that's what's happened."

We first consider whether the trial court committed plain error in submitting the instructions for counts I and II – the first-degree statutory rape and first-degree statutory sodomy charges related to S.B. from March 1, 2012, to June 1, 2012, in the City of St. Louis. We find the trial court did not commit plain error in submitting these instructions. Like in *Walker* and *Armstrong*, while there was evidence of multiple acts of first-degree statutory rape and first-degree statutory sodomy against S.B. from March 1, 2012, to June 1, 2012, the evidence showed the incidents occurred in such a manner and location there was nothing the jury could have relied on to meaningfully differentiate the separate acts of rape and sodomy. See *Walker*, 549 S.W.3d at 11-12; *Armstrong*, 560 S.W.3d at 572-73. Henry raped and sodomized S.B. in the *only* bedroom at Cook St. numerous times between March 1, 2012, to June 1, 2012, but there was no risk the jurors would base the convictions on different underlying acts. See *Walker*, 549 S.W.3d at 12; *Armstrong*, 560 S.W.3d at 572-73. Henry concedes in his brief that the charges for counts I and II only applied to the conduct that occurred while they were living on Cook St. There was nothing distinctive about the crimes that violated Henry's right to a unanimous verdict. See *Walker*, 549 S.W.3d at 12; *Armstrong*, 560 S.W.3d at 572-73. Henry did not attempt to exploit factual inconsistencies or factual improbabilities regarding the incidents on Cook St. See *Celis-Garcia*, 344 S.W.3d at 159.

On counts III and IV, the first-degree statutory sodomy charges from June 1, 2012 to February 3, 2013, and from July 1, 2012 to February 3, 2013, in the City of St. Louis, the State concedes the trial court erred in submitting these instructions but argues the conviction for count

16

III did not result in manifest injustice because the State's evidence and argument focused the jury on one repeated, identical course of conduct. We agree.

The instructions allowed the jury to convict Henry of first-degree statutory over the time periods alleged for the sodomy that occurred in the porta potty *or* in the laundry room *or* in the bathroom on Carr St. This was plain error, and the State did nothing in its presentation of evidence or closing argument to ensure the jury would be unanimous on the conviction for count IV. Accordingly, Henry's conviction for count IV is reversed and remanded for a new trial.

Regarding count III, however, we find no manifest injustice occurred. Unlike in *Carlton*, where the State failed in closing argument to tie the charges to any specific act for each count, 527 S.W.3d at 877, the State in closing argument specified that the sodomy charge in count III was for the conduct that occurred on Carr St. in the laundry room when Henry would have S.B. move the trash can before sodomizing her. On count III, the State argued:

> This occurred at [Mother's sister's] house. This occurred as Count III. He put his penis in her mouth while at [Mother's sister's] apartment. She discussed and showed you in the pictures where he would stand and move the trash can and he would stand against the wall and then she would stand in front of the trash can and either kneel or get on her knees and suck his penis.

Like in *Walker* and *Armstrong*, while there was evidence of multiple acts of sodomy occurring in the laundry room on Carr St. between June 1, 2012 to February 3, 2013, the evidence showed the incidents occurred in such a manner and location there was nothing the jury could have relied on to meaningfully differentiate the separate acts of sodomy. See *Walker*, 549 S.W.3d at 11-12; *Armstrong*, 560 S.W.3d at 572-73. While the instruction as written would allow the jury to convict Henry for the sodomy that occurred in the laundry room or bathroom on Carr St., we find the State's closing argument specifically directing the jury to the conduct in the laundry room

17

prevented manifest injustice. See *Escobar*, 523 S.W.3d at 553. Point I is granted in part and denied in part.

## II. *Brady*

In point II, Henry argues the trial court abused its discretion in denying his motion for a new trial because the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence indicating S.B. was pregnant at the time of trial because this evidence was relevant to S.B.'s credibility and was favorable impeaching evidence material to Henry's guilt. The State contends point II should be denied because Henry failed to prove the alleged *Brady* material was either favorable or material. We find the trial court did not abuse its discretion in denying Henry's motion for new trial.

Review of the denial of a motion for a new trial is for an abuse of discretion. *State v. White*, 81 S.W.3d 561, 567 (Mo. App. W.D. 2002). Under *Brady*, due process is violated when the prosecutor suppresses evidence favorable to the defendant and material to either guilt or punishment. *State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008). Evidence is material only when there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *Id. Brady* only applies where the defense discovers information after trial that been known to the prosecution at trial. *Id.*

Here, it is unclear whether S.B. was pregnant or whether she lied about being pregnant, but what is clear is there was no *Brady* violation because the State did not know at trial if S.B. was pregnant. After trial she denied she was. See *White*, 81 S.W.3d at 567. Further, Henry failed to meet his burden of showing that S.B.'s pregnancy status was material to Henry's guilty or punishment when given his opportunity at the hearing on his motion. *Id.* The trial court did not abuse its discretion in denying Henry's motion for a new trial. Point II is denied.

18

### III. Speedy Trial

In point III, Henry contends the trial court clearly erred in denying his motion to dismiss the charges based on the State's failure to bring him to trial within 180 days of the State's receipt of his request for a speedy trial under the Uniform Mandatory Disposition of Detainers Law ("UMDDL"), § 217.450 *et seq.* The State argues the trial court did not err because Henry was brought to trial on the 180th day. We agree with the State.

Whether a case should be dismissed based on the UMDDL is a question of law we review de novo. *State v. James*, 552 S.W.3d 590, 595 (Mo. App. W.D. 2018). Whether a defendant's Sixth Amendment right to a speedy trial was violated is also a question of law we review de novo. *Id.*

Within 180-days after receiving the request and certificate "by the court and the prosecuting attorney or within such additional necessary time as the court may grant, for good cause shown in open court, the offender or his counsel being present, the indictment, information or complaint shall be brought to trial." § 217.460. "If the indictment, information or complaint is not brought to trial within the period and if the court finds that the offender's constitutional right to a speedy trial has been denied, no court of this state shall have jurisdiction of such indictment, information, or complaint . . . ." *Id.*

To trigger the 180-day time limit, a defendant must show he made a good faith effort and substantially complied with the procedural requirements of the UMDDL. *State v. Sharp*, 341 S.W.3d 834, 838 (Mo. App. W.D. 2011). The 180-day period of § 217.460 begins to run only when both the prosecutor and the court receive a defendant's request for disposition and the director's certificate. *Meyer v. State*, 854 S.W.2d 69, 71 (Mo. App. E.D. 1993).

"Any delay attributable to a defendant's affirmative action or agreement is not included in the period of limitation, and therefore, a continuance granted at a defendant's request tolls the 180 day period." *State v. Allen*, 954 S.W.2d 414, 417 (Mo. App. E.D. 1997). "A defendant may not have the benefit of a delay caused by the grant of this request and then charge the delay to the state." *Id.*

On November 14, 2016, Henry filed his request for disposition in case number 1422-CR03286. On December 1, 2016, Henry moved for a continuance because he had not retained counsel. The cause was continued to December 8, 2016.

On December 8, 2016, Henry entered a plea of not guilty and the cause was scheduled for trial on February 6, 2017. On January 26, 2017, the State motioned for a continuance of the February 6, 2017, trial date. Henry objected to the continuance. The court granted the motion and scheduled the trial for March 6, 2017. On March 2, 2017, the State entered a memorandum of nolle prosequi.

On March 7, 2017, the State filed charges against Henry in case number 1722-CR01066. A judge was assigned to the case that day. Trial began May 22, 2017.

We find Henry's speedy trial right was not violated because he was brought to trial within 180 days of the court receiving his request for disposition. Henry's request was received by the court on November 14, 2016. This was the start date for the 180-day limit. *Meyer*, 854 S.W.2d at 71. One hundred and eighty days from November 14, 2016, is May 13, 2017, but on December 1, 2016, Henry moved for a continuance. His motion was granted and the cause was continued until December 8, 2016. Henry's request for continuance tolled the 180-day period seven days. *Allen*, 954 S.W.2d at 417. Seven days added to May 13, 2017, is May 20, 2017, which is a Saturday. Henry's trial began on the following Monday, May 22, 2017. Under Supreme Court Rule

20

20.01(a),[2] if the last day of a period is a Saturday, Sunday, or legal holiday, the period runs until the end of the next day which is neither a Saturday, Sunday, nor a legal holiday. Thus, we find Henry was brought to trial on the 180th day following the court's receipt of Henry's request and there was no UMDDL violation. See *State v. Malone*, 694 S.W.2d 723, 725 (Mo. banc 1985) (finding it reasonable to extend the 180-day limitation to a Monday when the 180th day falls on a Saturday). Henry's UMDDL trial right was not violated. Point III is denied.

### IV. Constitutionality of § 56.087

In point IV, Henry contends the trial court clearly erred in denying his motion to dismiss the State's charges against him because § 56.087 which sets forth a prosecutor's right to dismiss and re-file charges so long it is within the statute of limitations is unconstitutional. In support, Henry relies on the United State's Supreme Court's *Klopfer v. North Carolina*, 386 U.S. 213 (1967), decision. The State contends the Missouri Supreme Court has rejected Henry's argument and therefore Henry's argument is merely colorable and should be rejected. We agree.

The Missouri Constitution vests the Missouri Supreme Court with exclusive appellate jurisdiction in all cases involving the validity of a statute. *Matter of J.D.B.*, 541 S.W.3d 662, 666 (Mo. App. E.D. 2017). The Missouri Supreme Court's exclusive appellate jurisdiction is only invoked when the constitutional issues are real and substantial, not merely colorable. *Id.* When a party's claim is merely colorable, the intermediate appellate courts may review. *Id.* If the United States Supreme Court or Missouri Supreme Court has addressed a constitutional challenge, the claim is merely colorable and the intermediate appellate court has jurisdiction. *Id.*

---

[2] All references to rules are to the Missouri Supreme Court Rules (2018) unless otherwise indicated.

The constitutional validity of a statute is a question of law reviewed de novo. *Alpert v. State*, 543 S.W.3d 589, 595 (Mo. banc 2018). We presume a statute is valid and we will not declare it unconstitutional unless it clearly contravenes some constitutional provision. *Id.*

In *State v. Sisco*, 458 S.W.3d 304 (Mo. banc 2015), the defendant asserted "that allowing a prosecutor to dismiss a case without prejudice violates the Sixth Amendment under *Klopfer* . . . because it would allow a case to go on indefinitely." *Id.* at 311. The Missouri Supreme Court noted that "[c]ourts have distinguished Missouri's *nolle prosequi* procedure from the one in *Klopfer* because, in Missouri, the indictment is dismissed and not indefinitely pending." *Id.* at 311 n.7 (citing *State v. Morton*, 444 S.W.2d 420, 425 (Mo. 1969)). In *Morton*, the Missouri Supreme Court held "[a] nolle prosequi under the North Carolina practice is similar to a general continuance and so unlike the effect of this procedure in Missouri that the decision is not controlling or persuasive in the present case." *Id.* at 425.

We find that given the Missouri Supreme Court's guidance in *Sisco*, Henry's argument is merely colorable and he has not overcome the presumption that § 56.087 is valid. Point IV is denied.

### Conclusion

The judgment and sentence of conviction on Count IV is reversed and remanded for new trial. The sentence and judgment as to all other counts is affirmed.

_____
Philip M. Hess, Presiding Judge

Robert G. Dowd, Jr., J. and
Mary K. Hoff, J. concur.