

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

STATE OF MISSOURI,                    )        No. ED107976
                                      )
    Plaintiff/Respondent,         )        Appeal from the Circuit Court
                                      )        of the City of St. Louis
v.                                    )
                                      )
DELVIN BROWN,                         )        Honorable Jason M. Sengheiser
                                      )
    Defendant/Appellant.          )        Filed: August 25, 2020

## Introduction

Delvin Brown (Appellant) appeals from the judgment of the trial court entered after a jury found him guilty of two counts of statutory sodomy in the first degree and one count of possession of a controlled substance, namely methamphetamine.[1]  We affirm.

## Factual and Procedural Background

Appellant does not contest the sufficiency of the evidence to support his conviction.  In the light most favorable to the verdict, the facts at trial showed the following:

Appellant lived with his biological daughters, T.B. (Victim) and N.B., and their mother (Mother).  Victim turned 10 years old the year of the offenses.  N.B. is about a year and a half older than Victim.

---

[1]Appellant makes no claim of error related to his conviction for possession of methamphetamine.

On September 20, 2017, Appellant called Victim down to the basement of their home. Appellant instructed Victim to bring a towel with her. Victim brought Appellant the towel, and tried to leave the basement. Appellant told her to stay. Appellant then took his pants down to his ankles and told Victim to rub his "private parts" with her hands, and Victim complied. As this was occurring, N.B. began to descend into the basement. Detecting her approach, Appellant told N.B., "Don't come down here unless you want to help." N.B. went back upstairs. Victim continued rubbing Appellant's penis[2] until "white stuff came out." Victim gave Appellant the towel, and Appellant told her to go back upstairs and wash her hands.

When Victim came back upstairs, N.B. asked her what had just happened. Victim told N.B. Appellant had made her move her hand up and down on his "private part." On hearing this, N.B. sent a text message to Mother that read, "Daddy is raping [Victim] downstairs." Believing N.B. had made a typing mistake, Mother replied, "[D]id you mean whooping or raping?" N.B. replied, "[R]aping." Mother asked if N.B. was certain of this; N.B. relayed to Mother what Victim said occurred in the basement. Screenshots of this text message conversation were admitted into evidence.

Shortly after this exchange, Appellant left the house with N.B. to pick Mother up from work. Victim remained at home. When N.B. and Appellant returned to the house with Mother, Mother took Victim and N.B. and left, leaving Appellant at the house. Mother testified her plan was "[t]o not let [Appellant] know [she] was aware of anything [and] to get [her] kids out of there and get safe." When Mother was alone with Victim and N.B., she asked the girls what had happened. Victim told Mother Appellant had made her touch his "private part." Victim was upset and crying as she related this to Mother.

---

[2]On direct examination Victim affirmed by "private" and "private part" she meant Appellant's penis.

After hearing this, Mother took Victim and N.B. to the police station. Victim was interviewed by a child abuse detective, Detective Ryan Barone (Det. Barone). Det. Barone interviewed the girls and Mother separately. In addition to telling Det. Barone about the incident that occurred that day, Victim revealed it was not the first time Appellant had made her touch his genitals. Victim told Det. Barone the abuse had begun when she was in the first grade and had happened several times. She told Det. Barone that all of the incidents were similar, in that they occurred in the basement, except for one incident that had occurred in her parents' shared bedroom. Victim did not elaborate on the bedroom incident and did not tell Det. Barone when it may have occurred.

N.B. was also interviewed by Det. Barone. In addition to relating her account of the incident that occurred that day, N.B. revealed she had previously witnessed another such incident. N.B. told Det. Barone that during the summer of 2017 she had gone downstairs and witnessed Appellant and Victim together, with one of Victim's arms in Appellant's hand, and Victim's other hand on Appellant's genitals. N.B. told Det. Barone she had not told anyone what she had seen. Both girls said they were afraid of Appellant. Victim said Appellant had threatened to kill her and Mother if she told anyone about the abuse.

After the interview, Mother signed a Consent to Search form for Appellant's and her residence. Police officers arrived at the residence to take Appellant into custody. A search incident to his arrest produced a small baggie containing methamphetamine in Appellant's pocket. Police searched the house, locating the towel Victim had told Det. Barone Appellant used in the incident. The towel was collected as evidence. Testing showed the towel was soiled with seminal fluid, which a DNA test revealed belonged to Appellant.

Appellant was charged with two counts of statutory sodomy in the first degree, stemming from the incident that occurred on September 20, 2017, as well as the incident N.B. witnessed during the summer of 2017. At trial, Appellant defended himself by claiming Victim and N.B. had been conscripted by Mother to fabricate the charges against him. Appellant characterized his relationship with Mother as contentious, volatile, and at times violent. To explain the presence of his seminal fluid on the towel, Appellant claimed it was his habit to watch pornography in his basement and masturbate, using the towel to clean up.

During *voir dire*, counsel for Appellant (trial counsel) questioned the prospective jury about their attitudes towards masturbation. Two venirepersons responded to trial counsel's inquiry regarding masturbation. Trial counsel then began to ask the jury about their views on pornography. The prosecuting attorney (prosecutor) objected, claiming that line of questioning would involve too much detail about the evidence to be presented at trial. A discussion was held at sidebar, after which the trial court, agreeing with the prosecutor, ruled Appellant may not examine the panel on their views of pornography use.

At trial, the jury heard the testimony of Victim, N.B., Mother, and Det. Barone. Victim and N.B. testified about Appellant's abuse of Victim on September 20, 2017, and the previous summer. Det. Barone recounted his interviews with the family and his participation with the investigation, including Appellant's arrest. Det. Barone testified Victim told him Appellant began sexually abusing her in first grade, with many similar incidents occurring, all of which took place in the basement except for one incident that took place in her parents' bedroom. The jury also viewed a videotaped forensic interview of Victim, in which she told the interviewer the same.

4

During opening and closing argument, the prosecutor argued to the jury that Count I, statutory sodomy in the first degree, related to the incident that occurred on September 20, 2017, which N.B. witnessed and about which she testified. The prosecutor also argued that Count III, statutory sodomy in the first degree, related to the other incident that N.B. witnessed the previous summer. The prosecutor did not encourage the jury to find Appellant guilty on the basis of any other instance of sexual abuse alluded to by Victim. Instruction No. 8 given to the jury read:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or between May 1, 2017 and August 31, 2017, in the City of St. Louis, State of Missouri, the defendant knowingly had deviate sexual intercourse with [Victim], by touching his penis to [Victim]'s hand, and
>
> Second, that at that time [Victim] was a child less than twelve years old,
>
> then you will find the defendant guilty under Count III of statutory sodomy in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> As used in this instruction, the term 'deviate sexual intercourse' means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person.

Appellant did not object to this instruction.

After deliberating, the jury found Appellant guilty as charged on all counts. Appellant waived sentencing by the jury. The trial court sentenced Appellant to 10 years' imprisonment on each of Counts I and III, to be served consecutively, and one year on Count II, to be served concurrently with Appellant's other sentences.

This appeal follows.

5

Appellant makes two claims of error on this appeal. Point I claims the trial court abused its discretion by prohibiting him from questioning prospective jurors on their beliefs regarding masturbation and pornography. Point II claims the trial court plainly erred in offering Instruction No. 8 on Count III because the instruction failed to specify a particular incident of sexual abuse the jurors must unanimously find occurred, such that Appellant's right to a unanimous jury verdict was violated.

## Point I

### *Standard of Review*

A trial court's ruling on whether to exclude a certain line of questioning from *voir dire* is reviewed for abuse of discretion. State v. Edwards, 116 S.W.3d 511, 529 (Mo. banc 2003). "The trial judge is in the best position 'to judge whether a disclosure of facts on *voir dire* sufficiently assures the defendant of an impartial trial without at the same time amounting to a prejudicial presentation of evidence.'" Id., quoting State v. Leisure, 749 S.W.2d 366, 373 (Mo. banc 1988). To warrant reversal, Appellant must do more than show the trial court's ruling was erroneous; he must also demonstrate prejudice. State v. Oates, 12 S.W.3d 307, 311 (Mo. banc 2000). This is done by showing a "real probability of injury" due to his missed opportunity to probe the minds of the jurors. State v. Clark, 981 S.W.2d 143, 147 (Mo. banc 1998).

### *Discussion*

A criminal defendant is entitled to a fair and impartial jury. Oates, 12 S.W.3d at 310. "A necessary component of a guarantee for an impartial jury is an adequate *voir dire* that identifies unqualified jurors." Id. "The purpose of *voir dire* is to discover the state of mind of prospective jurors and determine by examination which harbor bias or prejudice against either party which

would render them unfit to serve as jurors." Leisure, 749 S.W.2d at 373. "Discovery of the nature and extent of an individual's bias requires not only deep probing as to opinions held but also the revelation of some portion of the facts of the case." Id. However, counsel's presentation of facts to the venire panel is not unfettered. While "an insufficient description of the facts jeopardizes [A]ppellant's right to an impartial jury," State v. Antwine, 743 S.W.2d 51, 58 (Mo. banc 1987), "counsel is not permitted to try the case on *voir dire* by a presentation of facts in explicit detail." Leisure, 749 S.W.2d at 373. "Thus, a balance must be struck implicating both due process concerns and the requirements of the individual case." Id. (citation and internal quotation marks omitted). Charged with maintaining this balance, "the trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of *voir dire*." Oates, 12 S.W.3d at 310.

On appeal, Appellant complains the trial court prevented him from probing the minds of prospective jurors for potentially disqualifying biases against masturbation and pornography. However, the record clearly refutes this claim. Appellant was granted sufficient latitude to question the venire panel as to whether they held potentially disqualifying beliefs about masturbation. Appellant's question to the panel about masturbation elicited responses from two panel members, and Appellant was allowed to probe their potential biases. It was not until Appellant moved on to the related subject of pornography that the prosecutor objected and the trial court sustained that objection.

The only possible basis then for Appellant's claim is that he was prevented from questioning the venire panel about the closely related topic of pornography in addition to masturbation. Because Appellant's brief proceeds by mischaracterizing the trial court's ruling, he does not argue or demonstrate how pornography use alone was such a "critical fact… with

7

substantial potential" to reveal a "disqualifying bias" that the trial court's ruling subjected him to a real probability of prejudice. Clark, 981 S.W.2d at 147. Given the wide discretion of the trial court, and Appellant's failure to demonstrate otherwise, we find no error in its characterization of the use of pornography as an unnecessary detail of Appellant's alleged masturbation practices.

Point I is denied.

## Point II

### Standard of Review

Appellant concedes he neither objected to the jury instruction he now complains of, nor included this claim of error in his motion for new trial. Thus, we may at most consider this claim under a plain error standard. State v. Carlton, 527 S.W.3d 865, 870 (Mo. App. E.D. 2017).

Rule 30.20[3] provides: "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Review for plain error is a two-step process: First, the reviewing court determines whether an error affecting Appellant's substantial rights is evident, obvious, and clear. State v. Myles, 479 S.W.3d 649, 655 (Mo. App. E.D. 2015). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." State v. Hunt, 451 S.W.3d 251, 260 (Mo. banc 2014). Second, we determine that error actually resulted in a manifest injustice or miscarriage of justice. State v. Baumruk, 280 S.W.3d 600, 607-08 (Mo. banc 2009). "Instructional error is plain error when it is apparent the error affected the verdict." Hunt, 451 S.W.3d at 260.

---

[3]All rule references are to Mo. R. Crim. P. (2018), unless otherwise specified.

8

*Discussion*

Appellant contends this is a "multiple acts" case, like the one discussed in State v. Celis-Garcia, 344 S.W.3d 150 (Mo. banc 2011). "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. at 155-56. "In multiple acts cases, the possibility exists that jurors follow the trial court's instructions, yet individually choose differing instances of the crime on which they base the conviction, violating the defendant's right to a unanimous jury verdict." State v. Henry, 568 S.W.3d 464, 470 (Mo. App. E.D. 2019), citing State v. Watson, 407 S.W.3d 180, 184 (Mo. App. E.D. 2013). A criminal defendant's right to a unanimous jury verdict to support their conviction is guaranteed under the Missouri Constitution. MO. CONST. art. I, § 22(a); Celis-Garcia, 344 S.W.3d at 155.

Appellant contends this case implicates Celis-Garcia because although the prosecutor argued to the jury that Instruction No. 8, relating to Count III, corresponded to the instance of abuse witnessed by N.B. during the summer of 2017, there exists a possibility some jury members may have based their finding of guilt on other instances of sexual abuse perpetrated by Appellant which Victim disclosed in her interviews with Det. Barone and the CAC, including at least one instance that occurred in the parents' shared bedroom.

The court in Celis-Garcia offered two methods to address the potential for a non-unanimous verdict in multiple acts cases, by either 1) the prosecutor electing a particular criminal act with which to support the charge, to the exclusion of other criminal acts, or 2) describing in the verdict director itself the separate criminal acts and instructing the jury it must unanimously agree upon at least one particular act's occurrence. Id. at 157.

9

On appeal, the State argues the prosecutor chose route 1), by electing a particular instance of sexual abuse upon which to base Count III. The State notes the prosecutor consistently argued to the jury throughout the trial that the instance of sexual abuse charged in Count III was the one witnessed by N.B. during the summer of 2017.

It is true that, in the instant case, the prosecutor was consistent in his presentation of evidence and argument to the jury that the statutory sodomy charges were meant to refer to the instances of sexual abuse witnessed by N.B. on September 20, 2017, and the summer of 2017. However, the verdict directors themselves contained no indication that other instances of sexual abuse – those *not* witnessed by N.B., including the instance that took place in Appellant's and Mother's bedroom – could not potentially serve as the basis of Count III. Although the evidence of sexual abuse other than the two acts witnessed by N.B. was scant, nothing in the record can exclude the possibility some of them may have taken place during the summer of 2017. Thus, there was, however remote, some possibility that jurors could have based their finding of guilt on different instances of sexual abuse.

We note there is nothing in the text of Celis-Garcia that mandates the State must "elect" a specific criminal act to support a charge by including in the verdict director an explicit instruction that excludes the consideration of other criminal acts. Thus, under Celis-Garcia alone, it might appear sufficient that the prosecutor "elect" to prove a specific criminal act by specifying it through the presentation of evidence and argument to the jury. However, the Western District has considered, and rejected, this view in State v. Escobar, 523 S.W.3d 545 (Mo. App. W.D. 2017). In Escobar, the court found that although the prosecutor was clear during trial which acts corresponded to which instructions, this was insufficient to satisfy the first Celis-Garcia method because the verdict directors themselves did not so differentiate. Id. at 551. The

10

<u>Escobar</u> court held, "Unfortunately, the State's clarification of the acts they were charging in closing argument cannot cure the failure of the State to specify in the jury instructions the two instances of conduct to support the charges as *we must presume that the jury followed the jury instructions as written not the State's closing argument.*" <u>Id.</u> (emphasis added).

In the instant case, we must also presume the jury followed the instructions it was given, and not the argument of the prosecutor. See <u>State v. Rycraw</u>, 507 S.W.3d 47, 63-64 (Mo. App. E.D. 2016) ("We presume the jury followed the instructions given by the trial court, not the prosecutor's closing arguments."). The verdict director for Count III instructed the jury to find Appellant guilty if it found he had committed certain acts during the summer of 2017. As noted above, evidence of sexual abuse not witnessed by N.B. was scant; but there *was* evidence of other sexual abuse presented to the jury, including an incident that occurred in the parents' shared bedroom. Further, no evidence at trial excluded the possibility some of these other incidents occurred during the summer of 2017. Because the verdict director for Count III did not specify it referred to the incident witnessed by N.B., there is at minimum a remote and hypothetical possibility some juror may have found Appellant guilty of different instances of sexual abuse.

However, it is not enough that Appellant demonstrate a remote and hypothetical possibility of prejudice. "[U]nder plain error review, [Appellant] must also show that the trial court's error resulted in manifest injustice or a miscarriage of justice, thereby warranting reversal." <u>Escobar</u>, 523 S.W.3d at 551. Under these circumstances, taken as a whole, Appellant cannot show the verdict was affected by any instructional error. First, while the State's clear focus on the two instances of sexual abuse witnessed by N.B. does not itself cure instructional deficiencies, it is relevant in examining whether a manifest injustice resulted. <u>Id.</u> at 552. Here, as in <u>Escobar</u>, the prosecutor "focused its inquiry and its evidence" on the two instances of abuse

11

witnessed by N.B., and then argued to the jury it meant to support the charges against Appellant with the evidence of those specific instances. Id. This clear focus by the prosecutor greatly reduces the risk the jury may have found Appellant guilty based on an instance of sexual abuse other than the two upon which the prosecutor focused. Id.; see also Henry, 568 S.W.3d at 477 (State's closing argument specifying which acts supported charges "prevented manifest injustice"). Any risk of a non-unanimous verdict is further diminished by the scant and insubstantial evidence of other criminal acts committed by Appellant, rendering it even less likely any juror would have chosen one of them as the basis of Appellant's guilt and not the well-developed evidence of the sexual abuse witnessed by N.B.

Further, as in Escobar, the nature of the defense mounted by Appellant is relevant. In Celis-Garcia, the Missouri Supreme Court supported its finding of prejudice by noting the tactics the defense used to attack the prosecutor's case: picking apart witnesses' accounts of each individual act through cross-examination showing testimonial inconsistencies and factual improbabilities. Celis-Garcia, 344 S.W.3d at 159. Because the jury was presented with multiple distinguishable acts, each account of which was attacked by the defense, there existed a greater possibility jurors could have believed different instances occurred. Id. However, the potential for prejudice is reduced where the defense mounts a more general defense by claiming "that the victim[] simply fabricated her stories…." Id. at 158. Here, Appellant's defense at trial was that all allegations of sexual abuse against him had been fabricated by Victim and N.B. at Mother's behest, due to personal animosity against him. Because Appellant's defense did not employ the kind of exhaustive factual rebuttal as in Celis-Garcia, this too weighs against a finding of prejudice.

Taken as a whole, the record does not reveal any instructional error amounting to plain error, such that a manifest injustice or miscarriage of justice occurred. Subsequently, Appellant's Point II is denied.

Conclusion

The judgment of the trial court is affirmed.

_Sherri B. Sullivan_<br>SHERRI B. SULLIVAN, J.

Robin Ransom, P.J., and
Lisa P. Page, J., concur.