

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36916 |
| | ) | |
| ANDREW JAMES VRBA, | ) | **Filed: January 11, 2022** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden

**<u>AFFIRMED</u>**

Andrew James Vrba ("Defendant") appeals his conviction for first-degree murder and the trial court's statutorily-mandated sentence of life imprisonment without the possibility of probation or parole ("LWOP"). *See* section 565.020.[1]  In two points, Defendant, 18 years old at the time of the murder, claims the trial court:  (1) erred in sentencing him to LWOP because the sentence was unconstitutional as fundamentally unfair and disproportionate, both facially and as applied to Defendant; and (2) abused its

---

[1] Defendant was also convicted of one count of armed criminal action under section 571.015, and he was sentenced to a concurrent term of twenty years in prison for that offense.  Defendant does not challenge that conviction.  Point 2 concerns the denial of a motion for sanctions, but the only relief Defendant sought in that motion was for the trial court to order the State to amend its charge to second-degree murder and thereby remove the possibility of a sentence of LWOP.  All statutory references are to RSMo 2016.

1

discretion in denying his motion for sanctions against the State for failing to preserve potentially exculpatory evidence. Finding no merit in either claim, we affirm.[2]

## Background[3]

In exchange for Defendant waiving his right to a jury trial, the State did not seek the death penalty.

Defendant's victim ("Victim") was a 17-year-old boy that Defendant had been friends with for about a year. On September 9, 2017, Victim's sister contacted the police to let them know that her brother was missing. In the course of investigating that report, the police spoke with Defendant's girlfriend, Isis, and that conversation led officers to interview Defendant on September 20th. During that interview, Defendant quickly admitted that he had killed Victim on September 3rd. Defendant claimed that Victim's girlfriend, Brianna, told Defendant to kill Victim because Victim had raped her.

Defendant told the officers that he had thought about various ways to kill Victim, including the use of poison, but Defendant ultimately ended up stabbing Victim two times with a knife. When Victim was dead, Defendant sent a text message to Brianna that said, "It's done." Brianna and Isis then joined Defendant, and they burned Victim's body in the backyard.

---

[2] The Supreme Court of Missouri has exclusive appellate jurisdiction over the constitutionality of state statutes, but that exclusive jurisdiction "is only invoked when the constitutional issues are real and substantial, not merely colorable." *State v. Thomas*, 618 S.W.3d 609, 611 (Mo. App. E.D. 2020) (quoting *State v. Henry*, 568 S.W.3d 464, 479 (Mo. App. E.D. 2019)). Because the Supreme Court of the United States and the Supreme Court of Missouri have already addressed the constitutional claim raised here, Defendant's claim is merely colorable, and we are authorized to handle the appeal. *See Thomas*, 618 S.W.3d at 611.

[3] As required by our standard of review, all of the evidence (and the reasonable inferences that may be drawn therefrom) that we reference in this opinion is presented in the light most favorable to the verdict. *State v. Salyers*, 624 S.W.3d 456, 458 (Mo. App. S.D. 2021). Solely for ease of readability, we have adopted Defendant's practice of referring to his friends only by their first names.

The trial court found Defendant guilty of first-degree murder and imposed the mandatory sentence of LWOP.

**Analysis**

*Point 1 – Alleged Unconstitutionality of the Mandatory LWOP Sentence*

Point 1 claims the trial court erred in sentencing Defendant to LWOP

> because that sentence was fundamentally unfair and disproportionate, both facially and as applied, in violation of [Defendant]'s right to be free from cruel and unusual punishment, to due process, and to equal protection under the law, as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 10, and 21 of the Missouri Constitution, in that (1) a national consensus exists that an eighteen-year-old is not fully an adult; (2) scientific research indicates that the justifications for banning mandatory sentences of [LWOP] for seventeen-year-olds apply equally to eighteen-year-olds; and (3) even if a mandatory sentence of [LWOP] is not facially unconstitutional, it is unconstitutional as applied to [Defendant] since he was so close to the age cutoff, had learning disabilities making him a juvenile developmentally, and he was manipulated to commit the crime by an adult who ended up getting off virtually scot free.

All of these arguments have been rejected in decisions that this court -- just as the trial court -- is required to follow.

> All statutes are presumed constitutional. *Lopez-Matias v. State*, 504 S.W.3d 716, 718 (Mo. banc 2016). "Challenges to the constitutional validity of a state statute are subject to de novo review." *State v. Shanklin*, 534 S.W.3d 240, 241 (Mo. banc 2017). This Court will not declare a statute unconstitutional unless it clearly and unambiguously contravenes a constitutional provision. *State v. Pribble*, 285 S.W.3d 310, 313 (Mo. banc 2009).

**State v. Barnett**, 598 S.W.3d 127, 129 (Mo. banc 2020).

Section 565.020.2 provides that first-degree murder shall be punished by either death or LWOP. Both the Supreme Court of the United States and the Supreme Court of Missouri have repeatedly held that these mandatory penalties are constitutional when applied to offenders who, like Defendant, were at least 18 years old at the time their

murders were committed.  *State v. Barnett*, 598 S.W.3d 127, 132 (Mo. banc 2020); *Roper v. Simmons*, 543 U.S. 551, 560, 574 (2005); *Graham v. Florida*, 560 U.S. 48, 74-75 (2010); and *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

Point 1 is denied.

*Point 2 – Denial of Motion for Sanctions for Failure to Preserve Evidence*

Point 2 claims the trial court abused its discretion in overruling Defendant's motion for sanctions

> because the ruling violated [Defendant]'s right to . . . due process and a fair trial, to present a defense, and to effective representation, . . . in that the State failed to comply with a court order that required the State to preserve all evidence and all investigatory notes, and as a result of the State's failure to comply, numerous items of potentially exculpatory evidence were lost, to wit: (1) Isis's cell phone; (2) another cell phone (either Brianna's or one found at the crime scene); (3) documentation regarding contacts with Brianna's employer; (4) documentation regarding an interview with [Victim]'s ex-girlfriend, S.B.; and (5) documents [Defendant] provided to the Houston Police Department regarding [Victim]; at a minimum, the State acted in bad faith in failing to comply with the court's order.

We disagree.

On September 25, 2017, four days after Defendant was charged with Victim's murder, the trial court granted Defendant's motion to preserve evidence and investigatory notes, and it ordered the prosecutor to inform any and all law-enforcement officials of their duty to comply with the order.  The State agreed to the entry of the order, but it also noted that:

> if law enforcement have [sic] already done that and destroyed [evidence or notes], I can't control that at this point.  Just want to put that on the record. I have no problem informing and telling all officers that's to be done, but at this point, this is several days old, I just can't promise that they've complied with it for a fact.

4

Claiming that the State had violated the trial court's order, Defendant filed a motion for sanctions prior to trial. The trial court took the motion with the case.

During the trial, the law enforcement officials involved in the conduct at issue testified that the cell phones identified by Defendant were not destroyed intentionally and the destruction of investigatory notes occurred before the order to preserve them was entered. The officers also testified that the documents Defendant had provided to the police department that related to Victim had already been returned to Victim's family.

After hearing that evidence, the trial court denied the motion for sanctions.

> We review the trial court's imposition of discovery sanctions for an abuse of discretion. *Trotter v. Distler,* 260 S.W.3d 913, 915 (Mo.App. E.D. 2008). An abuse of discretion occurs when the trial court's ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation omitted).

***Delacroix v. Doncasters, Inc.***, 407 S.W.3d 13, 34 (Mo. App. E.D. 2013).

Defendant does not claim that the unpreserved items were exculpatory, only that they were "potentially exculpatory[.]"

> A defendant's right to due process is violated any time "the State suppresses or fails to disclose material exculpatory evidence." *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). However, when the State fails to preserve "potentially useful evidence"—that is, "evidentiary material of which no more can be said than ... it ... might have exonerated the defendant"—a defendant must show the police acted in bad faith before we will conclude his right to due process has been violated. *Id.* at 547-48, 124 S.Ct. 1200 (citing *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).

***State v. DeRoy***, 623 S.W.3d 778, 790 (Mo. App. E.D. 2021).

The trial court heard the testimony relevant to the question of bad faith, and, based upon its denial of Defendant's motion for sanctions, the trial court found the

officers' testimony credible.  Defendant offered no evidence in support of his claim that the items at issue were destroyed in bad faith; he simply claims that "[t]he State's lackadaisical attitude toward the preservation of evidence and notes was shocking, especially since the State was likely to seek a death sentence."  Bad faith exists when the material is destroyed for the purpose of depriving the defendant of exculpatory evidence. *State v. Armentrout*, 8 S.W.3d 99, 110 (Mo. banc 1999).  Even if we were to assume, *arguendo*, the truth of Defendant's unsupported allegation, a "lackadaisical attitude" does not constitute a purposeful intent to deprive Defendant of exculpatory evidence.

Point 2 is also denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS